equate iii terms to vest the estate; and all the rest of the points d$fided by the,pourt below, rest upon the question, whether, as the grants of the defendants had all issued previous to the death of Robertas S. Brandtz, and the consequent escheat thereupon to the government, the title when escheated inured to the benefit of these junior grantees, so that government could not grant it again unless subject to these posterior grants as contended for by the defendants; or whether the govern-meat took the estate as an entire thing, unaffected by junior patents, and could grant it again, paying no regard to these patents, so as to place the last grantee completely in the shoes of the first? Upon this question the cause must essentially term. For it is evident the act of 1739 is fully equal to any grant the legislature could give on parchment issued through the instrumentality of her ministerial officers.
8. That an individual who has conveyed land without title, and afterwards acquires title, cannot set it up, against his own deed, and that the title when acquired inures to the benefit of his grantee, is perfectly clear, In like manner, if he conveys, possessing title, and af-terwards makes a subsequent deed, and thereafter the estate first conveyed reverts to him, that the latieres-tate might thereby be rendered good, as contended in argument, may also be true. But this principle is adopted-to punish his wrong or compel him to do right, It was an act. of turpitude to convey without title, or after he had parted with the estate, and he is therefore estopped from asserting his after acquired estate. In other words, the law will not let him shew the truth, in alleging he had nothing when he conveyed, and thereby the title when acquired is held for his defrauded grantee. This doctrine was fully recognized by this court in the case of Massie vs Sebastian, 4 Bibb 433. But does this rule apply to governments, and are they fjttered by the same principle? In England the will of the king is substituted for the will of the nation. Hence it is said that the king can do no wrong. Not but the king as an individual may be as sinful as others; but as the will of the nation was centered in him, or rather as his will was that of the nation, he couid do no w rong, because the sovereignty of the nation could not be thus* impugned and arraigned. In a commonwealth like ours, the will of the majority expressed in the constitu-' *474 Uon trad laws, and developing its acts by its public functionaries created by ¡he people, is the sovereign. This-will is personified, yet it is ideal, and on the subjects within Us appropriate sphere, it is sovereign, and cannot he arraigned. Hence, wrong and fraud cannot be imputed to it, except so far as it violates the paramount will, written in ¡he form of a constitution, or the rules prescribed by the government of the union, or its corn-pads with other governments. In other cases,, it cannot be accused of fraud or subjected to estoppels, except so fir as it may have subjected itself. No instance. it is believed, can be found of either estoppels being allowed to operate, or fraud to be charged' against the crown of England, or the commonwealths of América.
Govoriimonfcs aro not subject to imputations of fraud or to estoppels; nor do their grants ofland imply warranties.
The doctrine is, they are not estopped. Hence, the supreme court of the United Stales, insinuate in the case of Fletcher vs Peck, 6 Cranch 87, that fraud could not be averred or proved against the government of Georgia. Thus the reasons which rivet estoppels on individuals fail, when applied to the government. Who can be accused of practising a fraud on these tenants by issuing to them a grant .for land covered by the previous grant of Robertas S. Brand tz? Certainly not the unseen,ideal commonwealth, who could not be conscious ofit. Not the majority of the individuals who compose the government, and who were then and may remain to this hour ignorant that such a grant has issued. Not the register, surveyor, or governor who signed the grant, or other public agents, if they did commit a fraud, they were not authorised by government to do so, and government cannot be responsible for their acts, though for such acts they may he made responsible to government. They were only authorized to demark and grant the unappropriated lands, and if they granted those that were appropriated, they had no authority to do so. Besides, much of the doctrine of estoppels as applied to individuals, is based on their warranty. They are not permitted to disturb the inheritance which they have covenanted to keep secure. This base also fails, when an estoppel against government or enuring of its title for the benefit of a junior grantee, is attempted to be founded on it. For there is no warranty either express or implied in the grants of the government, nor is the government bound in any *475 maimer by the terms of its grant,, to .make good the land or any portion of its value. '
The fact is, that government passed laws for the purpose of appropriating her vacant lands, and appointing public agents to effectuate that object. As observed at bar, in hergrants she was quiescent. The grantee, a purchaser, was the active agent. The government acted entirely upon his information and suggestion, for the correctness of which he himself and not the government was responsible. She declared the terms on which she would part with her vacant lands. She pointed out no particular spot to the purchaser. This he was to choose, and this choice was confined to the vacant,, and forbidden on appropriated lands. This choice must be made not only at his peril;- but if he chose- otherwise, and induced the government to grant him appropriated lands, by his suggestions to her agents, he perpetrated all the fraud himself. He was allowed to purchase, warrants and to locate them, provided, and on the express condition, that he did so on lands unappropriated* in that event only, she engaged to complete the contract by the emanation of the grant. If he deceived himself and the government both, it does not lie in Kis mouth to say, that he is a purchaser without notice, and that he has inyeigled the government into a contract, which he will assert against her for the purpose of imputing fraud, or of estopping her from the assertion of title, if in the course of events the land should revert to-ller. If the purchaser then faithfully complied with the terms and conditions on which he was- allowed to purchase, he acquired a title. If in this- he failed, either through ignorance or design, government never could have intended by her grants, to subject herself to numerous, ever-springing responsibilities, to imputations of fraud, to the effect of estoppel, and indeed to a. total inability for a thousand years to come, to take back by escheat or forfeiture the real title, when by. subsequent events -it-might return, unless she consented-to hold it for the benefit of the junior grantee, to whom she owed nothing, either by moral, equitable or legal, obligations. There cannot then be, even in a moral point of view, so much -wrong and injury done by the government, as has been complained of at bar, in permitting her to take back, hold and regrant, the only valid title, without regard totbe junior grants, obtained. *476 for the land even by an undesigned mistake. Of course^ we conceive that the government did take the title as she originally held it, on the death of the elder paten-tee, and that it was competent for her to pass and vest it in Nicholas and Isaac Gouverneur, as Robertus S. Brandtz, originally held it; and to the grants of the defendants below, well applies the maxim, “ Quod ab ini-tio non valet, in tractu lemporis non convalescit.” The doctrine now contended for, is not without the support of authority. In the case of Wilcox vs Calloway 1 Wash. 38, in adjudicating upon the effect of a patent obtained for lost or forfeited lands, it is said that such patent “ shall relate to the date of the original grant, .and avoid by priority all mesne grants from the crown. This has often been so adjudged, in disputes about priority, between two.’ patents with interfering bounds.” The same court has decided that grants for such es-cheated or forfeited lands obtained under the laws, appropriating the vacant, lands of the commonwealth were void, and that titles thereto, could only be acquired through the sales of escheators. as directed by law. In the case of Jones vs Jones, 1 Call. 468, the following language, in the case of conflicting grants of the same character, is used: It has been adjudged by this court, that in cases of interfering bounds, upon inclusive patents, lapse patents, and patents for surplus lands, the priority shall refer to the date of the old patent, always recited in the rule.” Such appears to be the rule adopted in that state, as appears by these and other adjudications. It has been contended at bar, that this rule arose out of the peculiar expressions of the Virginia statutes regulating such forfeitures and providing for new grants. In these statutes we have discovered, no peculiarity of expression, calculated to give origin to such a principle. But on the contrary it is the application of a previous principle to peculiar forfeitures and escheats accruing from time to time by the laws of that government. We therefore conceive that it was competent for the commonwealth, after she had taken this land, pro defectu haeredis, from Brandtz the-patentee, to regrant it as she look it, to the Gouverneurs, without any bar or estoppel arising from the posterior grants of the defendants, even though those grants were obtained by an innocent mistake in the patentee^ and total ignorance that the lands were appropriate^, *477 which was no doubt the case. Of this mistake and ignorance, the patentees and not the government, must bear the consequences.
Thejudgment must, therefore, be reversed with costs, the verdict set aside, and new proceedings be directed, not inconsistent with this opinion.