*391 Opinion op the Court, by
Judge Mills.
John Tabb was possessed of two Virginia land-office treasury warrants, amounting to the quantity of 42,532 acres, which were entered in, his name, in five separate entries, on the 24th of December 1782, and were after-wards granted by patents from the commonwealth of Virginia, jointly, to said John Tabb and John May, except one which was granted to Tabb alone; so that each became vested with one undivided half of the legal estate. On the 15th of August 1785, before the .emanation of the patents, John May made, out á statement of them, with other warrants, showing the interest therein, of Tabb and the other owaers, in the following Words:
“John Tabb, two warrants, No. 9,793 and 9,794, the said Tabb’s proportion being three sixth parts; the said William Kennedy and William May, one sixth part, .each; the remaining sixth part is the said John and George May’s joint property.- All expences to be paid by said Tabb.”
He added to the close of this list, a declaration that the foregoing was a statement of the locations made in partnership between the before mentioned parties, and *392 thereto signed his name as the agent of all the persons concerned. On the same day, William May endorsed on the back of this statement, that it was correct, and transferred his interest therein to Matthew Walton, who was to stand in his place; and John May, by an* °^er endorsement, agreed to convey to Walton the interest of the said William May. Walton, on the 10th day of September 1795, made an endorsement on the same paper, assigning the same interest to Lewis Craig, On the 27th of March 1792, George, May, by a proper writing, sold and assigned all his interest in said lands to Philemon Thomas. On the 5th day of June 1787, John May and William Kennedy made an exchange of part of their interest in two of the tracts; John May gave part of the entry of 18,000 acres, now the subject °f this controversy, and Kennedy gave up therefor, part of his interest in another entry of 4,532 acres, (all in the name of Tabb,) and entered into writings as fol-jowg. •
Query, whether there is cept the act of 18Í2,which will authorise a feme covert íand^by^at-torney, whe-holds the land in her own right, to her "rTtrasT for°r others — 'Vide 2d opinion,
ted^nV private act of assembly, are ¡strong Cevi-. dence against thosewhoob-tained its pass ge.
“ Whereas William Kennedy and John May are interested in several tracts of land, surveyed in the name J ohn Tabb, lying on the Ohio, below the mouth of Big-Bone creek, being part of a location for about four thousand five hundred acres; and also, in another sur-veJ ^>^00 acres, made in the said Tabb’s name, near the Ohio, .on the waters of Lee’s creek: It is therefore agreed upon, that the said Kennedy shall give up to the said May, all his interest in the land lying on QMo, below the Big-Bone creek; in consideration whereof, the said May agrees to give up to the said Kennedy, out of the aforesaid survey of 18,000 acres, s‘x acres for every five that the said May shall obtain, in right of the said Kennedy, out of the first mentioned lands; which lands, so to be given the said Kenne¿y by the said May, shall be equal in value to the generality of the said May’s share of the said 18,000 acres.”
On the 6th day of September 1792, said Kennedy sojd to said Lewis Craig all his interest in the said 18,000 acre tract, including, not only his original proportion of one sixth, but also the additional share which he was to have- therein by virtue of the aforesaid exchange with John May; and writings were executed accordingly. This additional quantity gotten by the ■exchange with John May, when calculated at the rate
*393 wl'áe' ;wi tB ‘lii^pW§-}ía^fFf|^^®® jfflllpiíp EoÉWafeaF^. JMi^iftá-b b ^WJklfe^ÉHMW^BEwwft ■ ■^^mft00M^T%i^^0lW!^^^^M0k:0''^0ííC^^^^ Yol. ÍV. 3 ~A * ’ §; *ít . ÍÍa^s heirs ^2lÍP^, f! *• * * ■)*- # t4r" *:v \ #■ *■ * " * ^ if ~ 4 ■ *,
*394 ly executed, pr&5I$?''aHd Fec*r;áÍ8íih''yÍElcounty’ court of Cheaterfiel'd|^y;Ivffich%dj?6,étedlájal”t!he*exéc|bors therein naixied ánóulllt'aké aH netS^[^«S|pp8t^ilbro“ píete' a\,lhi%4and eiáltós,’ and'ih^apjiwí^tá?s<b'%fa!§: neg-l^ttéíf'-or refused to .tál^c cation of the said .will,.-tie Itghrof in*añ‘d ío ítíe above mentioned j»rojpi»”í«?ít£^ttíé:ápi.i'd.ra'Ud, haJhefescendecLto Mary Mayvát^Rl^iÍá^®@5j^6' ohly blíiidrerí a&é'^eirs at under ftie' -age of Cwqnty-ofie''fifears,. caúrfof- ^fe'- itfto ah •agreement with the said Lewis ^C’Aig' áhfcmPhi lemon Thbmas,'concerning a division oLl^;'_s'aid‘']and, agmea-■btijíiQ íhéír respective • interest? therem?'- and Whereas' the shift Lewis Craig'and Philemon Thomas, b^jg dinrous of seMmghheir pro^i^ion-of pe said-land, have phtMoned the general assemblfwat 'ahj?6'i'*m'ay pass' d^ytíil|;'t-lte maimer in wilich sjfcb a division shall be rustle of said labd:-
**$ u Be it enacted'% dcr D. Orr,’Afthí _ w men, or any tvto of them, may láj^off. and q|j‘f iid^the said ln|||f Between the hqjrs of the sai’i^Jo.h¿'#ñl5^., and the sni'ddUevtis Craig and Philemon Tffomas,facqc>rdjng to tkeir‘several interests in the same, as above stated^éjanm-iiblyfto quantity and quality; and that aflqp. haVg^jsd I'ct^ppS1 the same, they shall return a fair' plat of 1Üe division to the county *court of Reason, there'to’'be whi^Mivisfffi so. rp.nde and, recorded,-shall !j9fectutfp; tój^ss'-"t^S¡^ said* MatftMay and '-Joint 'Bífcy, and to*fhe’-saw’Lewis Craig'- áadP Philfemo#* Tlá)mas/íth,f,'legal'tR-le in and to the-paqt-so allettei-t-to flSe^ifespéewely, ití &s full and ample at ma-nñieriáat’ií á sáf$e hadlbfeen made by order of a eobrt ofclraneér l'Wjhe i&netal -assembly, 'That Alexan-hVri'Edx and Miles ISLConwá that the s'aid John-May and*, Mary May, ínqy; áBíiny tintó within two years .aftér.tbey .may res-; peetivelwattaintiff.age qf twenty-one yéá'rfe, -filefájpjja-tioiv in-We county’cc^i'of Mason,'stating; ¿ü‘yf®ec» tionsthey ma'y have ti$$ne said division of tlae saf||g¿id, iMtfeiafho'iifat-ni^r tasthe- ‘directions s^f t >ns «gr »-u5jat»,'v«^ey shaft :eüil4|ítei -the ‘airái^i-hd-t s.halil^ppéaR' to. ¿Mi^i to- ’hitó®' é'é^fít»&<M; c«Játó^h:'.tór©@; "they • sbgífisÁ *395 égfdo'.tbe same, --aiKl make suchordeif therein as shall-vlpfmg'fpeabl'e toyuitiedand 'provided also, that Nothing inttfil act'.coiRaÍíie.d'''s,t®l-3lqrh.W:ikruecl to ex-¿fend-.to affhct^le*right, fitle Or. c^im itt:hnd to the ^aid landf,< or ány par-l. the reof, óf anjs-person whatever, except thO'^a,id;Mary Map and JollniMay, and of the" said L^.?vis;|¡>KS$g ánd‘Th,ilcmon Thamas.” '• _ %
_ 4' Oa<rae'2'6th of September 1794, a division of the said 18,000 .aqge. tract,'and no other, was returned to the IJíason ¿ófiííty cáurfiand there’ recorded, signed, b.f two of the said commissioners namqd.in said *act, the’.third having acd^cl as .surveyor in the execution of-thc survey, but; Rom sorpé Unknown cause, did not join in the report. In this division, the. commissioners firgVplaited, out some^rior interfering claims,, and did - nofeincitide-thhm|n |hfe calculation as land belonging to the"parties, and.jliviclecL the residue, Assigning to John May’S hors, qfe their pipportion, three-thousand five hundred acres; that is, three thousand in’sne body, arid .five hundred aCVaks® ¿«pother, and left ten acres around a lick then supposed to be valuable, undivided". The quantity, of three ,%ofisand acres, so assigned to-May’s heirs, is now theof controversy. .
-..-'SCft^Mcs. L|>wis, the executrix, had obtained-letters téstame fife ry, in Virginia, she and her then husband, .-ítfimñzis Lewis, on the 27th of May 1798, executed a lé’f^^f attorney to Richard Stevens, William Vaw» ter and John Lewis', of Kentucky, authorising* them fully to do all things necessary to be done under-the will-of the said John May, .-ip7Kentucl<y,..either-j.oinU^ etseverally, “‘except the executing o'f-titles to lands,” whiclfsheuld be done by the whole of them, or. the sajd Stevens; excepting also, “ if it should be thought expedient to relinquish any lands,” it was to be' done, as in the case of the execution of titles. The^same j&ltfer of attorney recited, that Thomas Lewis had a letter of’* att'orney from Joseph Jones, to do certain acts" for Jo-’ seph Jones, touching lands in thi§ country; and this let-terbf attorney transferred, to Váwter and Stevens, all the-"powers so delegated to Lewis himself, and. aifthor* ised them to execute them forLewis alone. Tips tetter ofattorney from Lewi's and wife, was acknowledged on. the. day of its date, before two justices of the peace of Chesterfieldeewnty, Virginia, whose offices were ccrti-fied by the clerk of the county, under the seal of tho *396 cour(;) and within three months, was produced to the clerk of this court and recorded by him. On the 29th day of January 1803, 'Vawter sold to Lewis Craig all the. land assigned by said commissioners,*'under the act of assembly, to John May’s heirs*» and ..executed a' conveyance to,Craig therefor, in the name pf Thomas Lewis alone, and not expressing his executorial character. It purports to convey that part of John Tabb’s: 18,000 acre tract on Lee’s creek, which had been “ allotted by Miles W. Conway and Alexander D. Orr, in pursuance to an act of the general assembly, to John May, George May, William May and William Kennedy, and agreeably to the several assignments and cori-tracts to.and with said Craig.” It also professed to include fife interferences with the prior claims, which the commissioners had platted out in said division, and purports to convey about eight thousand acres thereof. The deed is signed “ Thomas Lewis, by William Vaw-ter, his attorney in fact,” and has no aikisioij to the ti-tie or powers of Lewis, under the will of John May, except that in the latter clause is a warranty “ against the claim or claims of all those claiming through, by or undfer the title of the said Thomas Lewis, as executor of the estate of John May, deceased."'''
John L. May and Daniel Eppes and wife, the only children of John May, deceased, brought an action of ejectment against the tenants residing on the three theihsand acres assigned in a body to the heirs of John .May,"and recovered a judgment at law. To enjoin this judgment, Lewis Craig, Philemon Thomas, and the several tenants, joined in this bill, selling up the foregoing facts and transfers, admitting that the legal title did not pass to Craig under the deed by Yawteras agent, because it was informally and mistakenly written 'in the name of Lewis, when it ought to have been in the name of Lewis and wife, as executor and executrix of May, which they sayy«u;ose from the want of sufficient skill in the parties, and insisting that it was in ■ substance a purchase from the executors, and so intended, and that it ought to be enforced as such, as Vawter had*a power to sell, although Stevens was bound to join in the making of tilles; that Craig had sold to the tenants, who claimed under him; and if said contract with Vawter could not lie enforced, that still, as the interest of all the partners was vested in said Craig and Th«int *397 ás|íb}5 flip- RfpFes^id.aasignm0h¿,,e^,e,©'gt(4i33oiR 6|>C£fmjes le ft'in. J obfirMay, thp't.a new ,dL|is|q§¿pJi|dff .©reed, leaving to the 1, e s s 0 r s.of, t h q.p'1 amt iff ajt laWonl^ . tHat-quantitjj ir^tsadpf the qfiafitíjp clspinAdy/’ - ’
The;,answer deniet-knowledge of the. differential^ find assignments of fb§ different parties, JseR, qpwM»f|ie bill,| relies on the act of assembly and divisiqp-undeBp'L 4,,as 'fixing their interest ; denies any knowledge of tire purchase of Craig from Yawter, and insists that the íg|& ter of attorneyrauthorised no such sale'; that the consideration given,to yawter had never come tdjithéfia, and had failed, and that.the re Was ,rip’:p ri n dpi emfieq ujty on which said transactions between- Craig'and Vaw-ter could be enforced against them., , . v ,
The circuit court decided that the salenf vfe>vt'er^fe>' Craig, passed no equity that could be,enforced ,agai^f the heirs óf J. May, and that, of coursé, Craig, pr ffiasp' qlaiming under him, had no title-to their interest, and then proceeded, disregardingthe act’of assembly, to , tie the interest of Craig and Thomas; by virtue of their - severaRpurchases anterior to tfiepurchase ofQraigfrom Yawter, and fixed Ahe interest of J, May’s heirs to .pipe 1 twelfth of the while, and directed that it sh'óüfd fie • laid off to them out of the un|mproved land, if-practicable, somewhere in the whole^'fract;' and that to obtain this, all the tenants on the whole 18,000 acres,’-who Craig, should fie below forlKytth but aftqT'wafidy, had purchased under Thomas and made parties. The complainants-a'mended their bilk for this purpose; _ _,.... T .that amendment was withdrawn by consent, and eqch party appealed from the interlocutory decree. ■ ¡
The first question of importance presented .by the appeal of the complainants below, is the validity, in a court of equity, of the contract made between Craig and Vawter, for the interest of the heirs of John '¡Way. After the most mature deliberation on this point, we think with the circuit court, that this contract ought not to be specifically enforced against the heirs of John May, and that for the following reasons.
The consideration given by Craig was as follows: He executed his notes for-five hundred pounds, payable to Thomas Lewis, as the executor of John May. Mpstof this sum was paid to Yawter in discharge of these notes. Lewis, as executor, refused to receive these notes,.and ..disavowed the act of Yawter in selling, and no part there»- *398 ofe ver went to-thebens-Sí of John May’s -estafe. An» other paid of thp. consideration-,feas, John -Mayhad giv-oh a hondí-o Matthew.. Fifeon, Jjibding himáelf- that ,ki-s interest, when,the bond' was >to be. performed, .in the 18,0,00 acre tract, should'be ,at feast 3,000 acres,- and thafehe would convey to Patton 1,000 acres,choice- if said SjOOO^acres. This bond was setup against the ei-tate of J. May, in this country; and Craig conveyed) «two tracts of land to the heirs or representatives of Patton, in discharge ofthis.bond, which they agreed to accept jn satisfaction thereof, it being believed by Vawter, as he deposes, that J. May did not possess a sufficient interest in the 18,000 acres, to discharge the bond to Pattern. Injthese.convcyances to the heirs of Patton, Vaw-"fegc joibid 'wife Craig as surety for the title. The bond <p-Pattbn-was assigned to Vawter individually. Vaw-ter deposes,'that he held the bond for the benefit of th'é hítate of Jofeh’May, intending that it-should be extih-gtiished. - Lewis, the executor in right of his wJDfe, disavowing the sale, Vawter assigned this bond to Robertdobason, who commeil^ed some legal proceedings .thereon against the heirá of May, and the -eonlro-versy was referred, by order of court, on consent of-the parties, to referees, who awarded damages against fee heirs of J. May, for a breach thereof, for which judgment’ was rendered, which they have satisfied, or .are bpúnd to satisfy. It is evident, then, that if this contract; of Vawter was enforced in favor of Craig, it would he attended with peculiar hardship on the heirs of John May; for they have, not received one cent of the con-sidération, nor has it inured to the benefit of their ancestor’s estate; and besides, they are bound to' discharge a-claim by the act of Vawter, which was tohave been, dispharged by his sale of their land to Craig. And it is„a rtil-e in equity, that equity will not enforce a contract specifically, which, by subsequent events, will impose great hardship or loss on the defendant; but will leave the party to his remedy at law.
' To this, however, it is answered, and that plau-sibly, that Vawter was the agent of the estate and not of' Craig, and that if Vawter misapplied the consideration of the purchase, it was hot the business of Craig, but of the executors, who,''or their agent, are responsible. To this, however, we reply, that admitting, for the sake of argument, without giving any posiiive opinion thereon,' *399 , IKfhsVJ 11 HC4.A'Ct*1^V-l 1>U’I> V(fiV}¡i|fl>IM^(r 3jj3^0'W<;,i*««'* VJ* infect. The' commissioners Bad lfit)g ll¿íbrÍ§«Ci'ii3'ÉÍ;'ian apt of assembly, proc-iífed oiythh joint p'JH^T and-TKrfelas, when'they ttíérnse]ves-'ha<P<^ ^ May’sAinterest, laid off 3,500 acres to "Miy’s ¿stiff#. i^Phese facts were’ certainly known to Ct-ajgy and., perhaps j to Yawter.- T-f'tBey were knowrp-’to lie' fddkti&f^ ¡aloné, he ditL rffrt rspr.e&fentethe true state of thg'eaa^t'o either Yawter or Patton, which he Ought to" hWe^ftho, so. that they bond might have'TOW xnschefrged the land it called far, instead of other lands • from Cfaig, in, order that he might obtain íhe'whole 18^M>Qsá«res. those’ facts were known, to both- Yawter . makes Craig’s case no better; for it: wa# ijag$||>er for tl|éro!f§;combin0 to purchase up the bo,ád,5ywlth' other Mkds/ifndera pretext thair it could po¿ fes discharged mti> the land$ it claimed on its face{lcjptóry- to tM truth of tffS fafct. A nó%pr circumsta r®fe,|'Co El do c e£ • J show unfairness.^, Tha H^cl from Va wteefe C raig; ] p.qrts ta convey. the lafictípaid off by'the comkmssk tJoim' May, George-Mayp-Willjam May aüíd'Willi'ayñC''1 nedy,” ..when ther&*Was no such land laid off. •tí$¡ip' the.cojhmissioners any power to lay off any ■ lancfs to George or-. William May, or William Kennedy;' batonly foró1¿ie heirs.of John May and Thomas arid Crai-g, Spw this ffatement mu'|i¡íave been procured by CrlM^1 who-knew better, to &Mle,<jfeption of Yawter, or Battit knowing' otherwise, so^Bfüiggi it to-?Mind the'exeeatppf, Add to t-his¡iflSPÍíaw.t'dE,oepose& t-ital Craig-'. ka.i^yr^^textent of his- power of attorney, andlthat’W1' wasjálPPppthoftssd to convey,-and was. possess^ of cry, f circumstance relative to the.defects thereof,, 'a-pep took the conveyance at a Fisgue. These cireuffiSfá’£tÉf<Ís;' p.jje glide Craig from standing in the attitude ofiJi'n#-eppee and ignorance,-and'ma-ke him, measurably, pdr-ticeps crimpis wthp makápprop'malion of the money, pt {east show-thaj$j|p entered ini£i a contract defective,' andffdfeadvantageous to.the heirs; wi|h,fei&eyes -open, uné»í containing on 14 -faee,,.-:the¿i¡»tók .of the cate. The>y'-arexÍEcumstancQS;V5|^h.fcbade;E.hjfehcaÍ^rün^o¿rit soifesf^im^il^ npftst b^'éa^alljí^&f foan-ts • i'ni'the hill, as thé-jOTfeki'iwo ! whether *400 p’o'rchá'sers'oí^s teri*íhts, or'that they ha$s. tithe íti pheip |$yoA?yC length of , f So *
Other dbiéc lions lie , , he against .enforcing* this' contract. It has been decided by this court in the case of may's heirs vs. Slaughter, 3 Marsh. 504 the iegal'estate under the will, when 'she administered, hrid that' previous thereto, the heirs held it subject to the contingency of her administration. It has been 1 ¿Atended in argument, that she only had a power to egar% *' This, as* a general principle," is admitted, and is well established in Buger vs. Duff, 4 John. Chan. Rep. 368, á'nfc&thorUies there cited. Here, however, the ^ifill' oruiShn'May devised as follows: “ I give Jand 'be- " qüeá'th'my land' to my executors hereinafter named, arid to'the surviVers Or surviver of such of them as {nay act, and their heirs, for the purpose of selling a's much ffieiíe-óf.as will pay all my debts of every ldrid.” He also proceeds "tovgive them ample powers, not only to sell and convey, but to adjust andfcompromise and convey, iff discharge of some specific legacies, and then directs 'the residue oThis estate to go to his widow and-tlre-two ‘'ífhíerídárits, in the court below, who were his children," in eqriafprdportions. ‘ These provisions of'the will, give more than,a power, and vest an interest or the legal es-táte, sb that the objection that a power cannot be delegated to ah agent, does not apply. Still, howevér, an 'objection equally formidable,- remains. The title webt • fo Mrs.'Lewis on her admffiistratioa, arid although she . ^rnight hot be able‘to execute the trust and part wpth the ’feSfáte, Without her husband’s joining in the áCt,' as he *w'as toiíe ' responsible for mal-admiüistraüon ;. y&t, we 'conceto that he could'npt sell and convey, witftorit'-she wasfdined in the deed. It is true, a husband who .is executor in right of his wife, may sell the chattels "of the estate which pass by delivery, and release debts with'out the consent of his wife; but it is 'dot solear, that he could sell real estate, under a bare power given in a will. But without expressing any opinion on this'point, we have no hesitation in saying, that he could not sell .lands; the title of whiclx.wasin her. ’ a.., -• -
c . “In this casé, thé-trtl&'was Vested in tragar partieu-:h$ pujfto'ses; -but we aré’aware of-rio rúlc^ffiílá^'vvhich vlduid make it an eicepñfm frotó'the'geriferdlpulfe, that *401 the .husband cannot sell and pass the lands of the wife, unless she is joined. In this case, she had signed and sealed the power to Yawter, as well a's her husband; hjft we are aware of no law in existence at the date of this power, which enabled a feme, covert to sell and convey la-ntH by letter of attorney, even if the e'state was her own and not held in trust; and we sce.no reason why this case of a trust should he an exception, unless there was-a collateral power. It results then, that the letter of attorney conferred no power on the agents to sell lands without her, and that she is of course no party to this contract between Yawter and Craig, and as she is not, Craig could not acquire either a legal or equitable estate. And this will be the result, even if it be admitted that Yawter executed the power inartiiicially, by» mistaking the proper mode, of which there is no proof. And indeed this is a circumstance which rather, casts a shade of suspicion on the transaction. It is somewhat |irobahle that the title was so executed designedly, and' that both entered into it, for the purpose of giving Craig the semblance of a legal title to enable him to have the colour of right to convey to the purchasers from him, who were pressing him for conveyances.
Vide, pc opinion
As the contract then between Craig and 'Yawter, cannot be enforced specifically, the parties go hack to their original interest, which they held1 before that sale took place; and the - inquiry remains, what that interest is, which then belonged to the representatives- of John May? Was it the fraction of a twelfth, as seems to ap-. pear from the writings produced by the complainants below, or is it the fourth, as fixed by the act of assembly? -’This question must turn upon the weight which this act of assembly is to have in the cause, coupled with other circumstances; for it is clearthat by the writings hele} by Craig and Thomas, the interest of the representatives of May, is far less than the statute assigns them. We need not here enquire into and determine whether the division directed by this act,' was such a power as could be exercised directly by the legislature, and whether it vested the legal estate in the parties, according to its directions, if it was the act of the legj^la-ture of a country which could exercise all powers, legislative, judicial and executive, there could be no doubt that such án act might conclude the rights of.the parties; but in this coiinirvj where the powers of *402 ment arc divided, and confided bj the constitution,each to a seParatc body °f magistracy, and none of these bodies can exercise the powers properly belonging to another, the question whether the legislature could make such, division, depends'upon the inquiry, whether the power of making partition in such a case as this, is exclusively judicial? But without going into the inquiry now, how far the legislative act is a record that ought to es-top the-parties, and inclining to the opinion that it could not estop the heirs of May, who were not consulted on its passage, and consequently that it ought not to conclude the'other parties, as such estoppels must be mutual, we have no hesitation in viewing the act as strong evidence of a satisfactory nature, that the facts recited therein are true, even if it be conceded (hat the subject-matter was not proper -for legislation. Let it be recollected that the different proportions of the partners, as shewn by the writings, are as they existed some four or five years before the death of May, and in the aforenamed bond, which he gave to Matthew Patton, he expressed an intention and covenanted to have a greater interest when the bond fell due, which gave him a mo-tivé to acquire more than the one twelfth. At the passage of the act, Craig and Thomas could not have any motive to represent their interest less than it really was. They told their own story,-without any to confront them. They do not appear to be in any manner ignorant of their own rights or those -of the heirs of May. It is also evident from the recitals of the act, as well as one of the patents which issued wholly to Tabb, whose interest was not conveyed to Thomas for nearly two years afterwards, that the interest of Tabb himself, had been altered from the manner in which it stood in 1785, when May gave the writing determining the respective interest of the parties. The act, it is true, recites a. quantity-different from that of the warrants; but still the act is correct, as the quantity there recited agrees precisely with the quantity which was surveyed and patented. Under such circumstances, the admissions of Thomas and Craig before the legislature, ought tobe takqn against them, even if the legislature had no power to pass the áct. Such an admission in a court of record, which had no jurisdiction of the case, ought to- weigh strongly against them. It is true, it is decided by this court, in the case of Elmondorff, &c. vs. Carmichael. &c. *403 3 Litt. Rep. 472, that th.e.recital in a private act' of assembly, cannot be evidence against strangers-, or con-elude their rights. Still, if admissions were there mad'e against the parties procuring the passage of the act, such admissions ought to be heard against themfon ihe-principia that their writings and sayings fnay be used as evidence against, and not for them. * The recitals in such an act, as said in the case cited, are evidence that facts were so represented to the legislature by the petitioners. It is evidence that Craig and Thomas procured -its passage, and that they placed the facts as stated on the legislative records. It ought then to be presumed, that J. May had acquired a greater interest, such as the act acknowledges. The allegation in the bill, that John and George May’s part was laid off by the commissioners together, cannot be sustained. The quantity laid off for excess, the one twelfth which they held according to J. May’s original statement, the ■commissioners had no authority to divide in favor of George May, and their acts contradict the assertion. Besides, if we should conjecture how John May in the meantime had increased his interest, we should rather suppose it came -from Tabb, than any.other partner. It also appears, that the parties conveyed to, and acknowledged the lines of the part assigned by the commissioners to John May’s heirs, calling it theirs, and for twenty years did not appear to question it; and the idea of lessening it, must have been an after-thought, when pressed by the ejectment of the heirs of May. We» therefore, conceive that the interest of the heirs of John May,- ought not to be made less than the act of assembly, and the division under it procured by Thomas and Craig, make it, and that there is no necessity or propriety in disturbing, at the instance of Craig and Thomas, the purchasers from them in other parts of this large tract, when John May’s heirs do not desire it, and are satisfied with what is assigned, and the court below erred in directing this to be done.
The decree must, therefore, be reversed; and the cause be remanded, with directions to the court below there to- dissolve the injunction and dismiss the bill '«Kith; costs.
The parties who were defendants in the-court below,. to 'Wit, the heirs of John May, Chambers, Paxton and Key, must recover in this court the costs o,f both ap--peals,
*404 Shortly after this opinion was given, Crittenden and ^a8'S^n Prayed a re-hearing by the petition following:
The court is respectfully • asked to re-consider this cause, and the decision rendered therein. The great value of the land in controversy; the vital importance of the case to the fnany settlers, whose ruin is involved in the decision; the perplexed and complicated state of facts embraced in the contest; and the sincere and earnest and deliberate conviction of counsel, that a maturer consideration of the case, will produce a different decision from that which has been rendered; will form, it is hoped, a sufficient apology for troubling the court with this petition.
John Tabb, William Kennedy, William May, John ánd Geo. May, were interested in various land warrants and locations, to the amount of about 42,000 acres. Of these lands, 18,000 acres were surveyed in one tract, and patented to John Tabb and John May; and the interests of the respective partners were as follows:
John Tabb was entitled to 3-6 or 1-2 equal to 9,000 acres.
'William Kennedy to 1-6, equal to 3,000
William May to 1-6, equal .to 3,000
John and George May to 1-6, equal to 3,000
• 18,000 .
That such were the respective interests of the parties, is incontestable. The answer of the defendants, May’s heirs, admits it. John May, then, was entitled only to one half of one sixth of said survey, equal to 1,500 aefes; this was the total of his interest. It dearly and mani-* festly appears, moreover, that Craig and Thomas purchased the whole interests of all the partners of John May in said survey, and thereby acquired a right -to all the survey except that part which belonged to John May, These purchases by Craig and Thomas, are most satisfactorily established. They are not, so far as we recollect, contested by May’s heirs, or questioned in the opinion delivered by the court. And if these facts he true, how can it happen that John May or his heirs, are entitled to more than one twelfth or 1,500 acres of said survey, or that Craig and i bomas, or ihose claiming under them, are'entitled to less than the whole residue of the tract? If the case stopped here, there could he . no difficulty in it. But in June, 179’2, an act of assem *405 bly was passed, reciting that May’s hei rs were entitled to one. fourth part of the lands appropriated in partnership as aforesaid, and autherising a' division thereof accordingly, by commissioners named in the act; and under this act, two of the commissioners allotted to May’s heirs, t 3,500 acres of the 18,000 acre survey. There is ■ no proof or presumption that they made division of any other tract. Under colour of this allotment, May’s heirs set up a claim to the 3,500 acres; and their right to it has been sanctioned by the decision rendered by this court, and that decision is predicated upon the evidence of ti-tic. filrnishcd by the before mentioned act of assembly and its preamble.'
Is this a sufficient foundation for such a-decree? The Legislature cannot, by any act of legislation, divest an individual of his right to latid, and give it to another. But if they do attempt it, and in an apologetic preamble,.state a case that would warrant a court of justice in decreeing to the same effect, is it true that the enacting part would be void, but that the preamble is to survive, as a memorial of truth, to he adopted and acted upon in • courts of justice as evidence, and upon its solitary testimony, that land shall be adjudged away from one man, and given to another? Such high and prevailing influence, cannot, and ought not, to be given to such a species of evidence.
•If such a doctrine were to prevail, a man might he •preambled out of his estate, though he could not be legislated out of it. The preamble of an act is mere sur-plusage, and is used now generally to justify or excuse the act with which it is connected, and framed general-131' more with that view, than with any very strict regard to accuracy. It is true, that this court, in the case of Elmondorff vs. Carmichael, 3 Litt. 480, say that the preamble of a private statute, “ may be evidence between the commonwealth and the applicant or party, for whose be'nefit the act passed.” This must certainly be pre-dicaled upon the ground that such preamble has been upon and according to the .representations' of such applicant or party. Was such the fact in this case? Who applied tor the act? The. heirs.of May saj1, that Craig and Thomas did; but there is no proof ofit. Much less is there any proof that they or either of them, concurred in the representations that May’s heirs were entitled to one fourth of said lands. But passing by all *406 this, and conceding that the preamble of such an act may be admitted as prima facie evidence of facts, let us ask if it is competent evidence to prove a purchase or contract far the purchase of land? Can it supply 'the -place of that written evidence signed by the party to be charged, which the statute of frauds and perjuries requires? It seems most manifestly to us, that it cannot. It can certainly be entitled to no more weight than any other proofof the parol declarations of a party. And it is presumed that the most satisfactory testimony, proving that Craig or Thomas, or both, had been heard to say, in the year 1792, that May’s heirs were entitled to one fourth of said survey, would not be considered by this court, as entitling them to retain that proportion.
But admit it to be competent evidence-, it is only primo: facie evidence, and ibe presumption which it creates of May’s having enlarged his interest by purchase, is liable to be repelled. The fact to be ascertained, is, what was the extent of May’s interest? It was 1,500 acres; no more; so say the written evidences of title. The act of assembly creates a presumption that be had enlarged that interest. That enlargement could only have been made by contract and purchase. Now, let us ask, of whom he made this presumed purchase? We cannot suppose that he made it of Tabb, of Kennedy, of William or of George May, without imputing to them the fraud of having sold the same land twice; for it is proved beyond question or controversy, that each of these parties sold their whole original interest to Craig and Thomas, or to others, from they derived it. We cannot suppose that such a purchase was made of Craig and Thomas, for the reason above assigned, and for these further reasons, that their.interests were acquired after the death of John May, which is proved to have happened in the year 1790, when he was coming to this country from Virginia, where he had in fact been for several years; and the sworn answers of Craig, negative any idea of such purchase. This presumption, then, of purchases by John May, cannot be indulged without imputing fraud to some one; without presuming fraud in some one. The presumption of such a purchase, is almost negatived by the answer of May’s heirs. They do not pretendió allege any such purchase; to have’ ever heard of, or to believe in the existence of any such purchase; but, in general terms, say, that they claim it *407 under- their ancestor, and the said act of assembly.' If -they-were really entitled, as the preamble of said bet recites, to one fourth of the *18,000 acre survey, why have they not sued fo'r that? Is it because they prefer 3,500 acres of the land, to 4,500, which would be one¿" fourth of the survey? And is their course to be attributed to mere moderation or forbearance? We think not. . They cling to this act of assembly, and are contented with the portion it assigns them, for very different reasons. From their ancestor they inherited but 1,500 acres; from this act of assembly, 3,500; and well may they be content with it, rather than to set up their original or proper right.
' It has been remarked, that John May’s bond to Patton, by which he binds himself that his interest in said survey shall be enlarged to 3,000, strengthens the presumption of his having made subsequent purchases. If such a presumption be at all warranted, it is certainly too feeble to be handled or weighed. The -only infer- • ence to be drawn from this contract, is, that he intended to purchase-, for surely a man cannot, by his own contracts, create presumptions in this way', and use them afterwards as evidence to increase his own, and prejudice the rights of others.
But on this branch of the cause, there is a very important exhibit, which seems to have been overlooked by the court.. We mean the record of the suit instituted by Johnson, as the assignee of May’s bond to Patton, against the heirs of said May. In his bill, Johnson insists on a specific performance; or if May’s interest had not been enlarged so as to give him the advantage of the selection to which he was by that contract entitled, then that he should be compensated in damages. In that controversy, the heirs of May did not pretend that their ancestor had enlarged his interest, or that he was entitled to more than his original interest. The cause was submitted to the arbitration of Judge Trimble and the fate General Hardin; and although all the parties and the arbitrators, must have been well aware of this act of assembly, yet it was not relied ón by May’s heirs, as proving any augmentation of their interest; nor was it considered by the distinguished lawyers who arbitrated the case, as any evidence of the enlargement of May’s interest. They determined that his interest had not been enlarged, and aw&rded- damages against his heirs. *408 This proves’one or both of these things, that May’s heirs did not consider their interest as enlarged by that act of assembly, and pretend to claim more than 1,500 acres, or if they did make any such pretension, that it was decided against them, by the most respectable and distinguished lawyers.
The questions, then, which arise on this part of the subject, are:
1st. Whether the evidence furnished by this act of assembly and its preamble, is competent to prove ail alienation of a right in land, or the acquisition thereof, and to supply the place of the written evidence required by the statute of frauds and perjuries?
2d. If it be competent, is the presumption arising from the act and its preamble, alone and unaided, sufficient to sustain the claim of May’s heirs?
3d. Is the presumption which it raises, counteracted and repelled, as it is in this case, by the written evidences of Craig and Thomas’rights; by the circumstance, that it amounts, necessarily, to a presumption of fraud of some one; by the pregnant silence of May's heirs in this cause, forbearing to state any single fact in support of such a presumption, or even to assert the presumption itself; by the proceedings and decision in the controversy with Johnson? Is the presumption so repelled, sufficient to prevail against the clear equity of the complainants, who have been long in the quiet possession of the land in contest, and have greatly improved it? We believe not.
It may be remarked here, that in the opinion of the court, it is stated that it does not appear but that all the complainants, the present holders of the land, arc the mere tenants of Craig and Thomas. In this point of fact, the opinion is certainly incorrect. They are stated in the'pleadings to be purchasers, and many pages of the record are made up of their deeds.
That there is some mistake in the preamble and act aforesaid^ is very certain. How did it occur? If it must be supposed that Craig and Thomas made to the legislature the representations of fact that are contained in that act, it ought only to be considered as their mistake, and not as evidence of the right of John May. Craig and Thomas had not, at the passage of that act, acquired the interest of all John May’s partners. Much of this interest was acquired afterwards, *409 the. in wjbpm.(,hh§y jf.ere vested, Wfc»#s^híNW^?^pi08é{l *plhs'é$te¿ in John' 8d¿ie other,, eVj-one,qus peculation, hay.e^héen dad,into the error of supposing,him entitled to:<Oiiiei&.a:li|b«.isiA*.miiSla,ke.Q.gthis sort would-be too ser, verely «visited, by the. eonseq.uenc.es attached-, to ijjsjiy 'tía'M^ap'kjtoa.of'th.Qféojir.t.,, , -, . -
W díos»%hirSgitíhe«-,qffeet oflhq.cQntnact between Yaw ter, «GnagQB&fcr JUeowis aqd-,\}dff>,Hand -Craig, we have al-that tl\e,d,eqsd4s..toojnartifi'cia]ly pyepar- . edVto'-p|’Ss the legal title; but must.yet hope, that the ÍEpiiS'5i¿(tÍ0n«erVÍid&n.ced,by that instrument, con/érs a clear «p¡üy>iV' .The general ru!e,of¡la,w does, it is true, disa-MeAhe-wife to-convey lands. Indeed, as. to the,estate ®fefcgei$sgl£.>o.rhusband,, she.,is. without will or power, utterly iippqtenf. .Bu,t stil.),,»a,!®ar,ried .woman may p.er-■fb.Ktini.th-A.d'uti.ps of-an ag^ni-jor. he.r. husband or others. ThaAshe-may. act as, trustee,,,fnd can in that character cpiiMeji even -without hey, husband*, see Fonblanq.ue’s 'Kfuki/y-^vpl. 1,’ p — 3.1 jJargfave’s.Co. Úiti,. p. 1,13*. »qteia<-Ñor can it possibly be an objection to the expr-@i$e-.q£ this authority, that she has an interest in the subj.estv . .See- the same authorities. ,
•By-the,.will, Mrs. May was authorised to sell,'to coqv premise, &c. and. her ability to do this jyas not impaií'-e^. .by.the.interest which was vested in her. Is it possible that John May expected his wife- to explore the wilderness, superintend the surveys, investigate the titles, compromise and sell, without the, power to call any cwie>-to her assistance? At least, she might contract by proxy. , By our law, no man can contract for the sale of his lands, but by writing; yet he.may oraily'authorise one to make such a contract. Indeed, we understand that the United States’ court has recognized the deed of,.conveyance by the agents ,under the present letter of attorney*.
Yawter, then, had power to stipulate for Ríe sale of thisAand; he.did so stipulate, for.a valuable consideration and.it i-sJmmaterial.to.pll.the purposes, of justice, wheihqi» he has correctly set, forth his character and cap@eisti.es.,. whether he called himself ageyit, in the wri-declared that,hq-repré&eqtqd the executors; alt ^@gi®orqbj,&ad in Yá.'wten,;-,eve«j..tbíing.áppéhdpd.qit *410 big will; j¡$£av¡e .£1$ assent^-n^iííieqps^^tóewÉíí^ífeíi* sent must pt-e^ik. - <*;V *~**V •
■ Atthe date of \5awteVs deed, he.-ke.M’bp.RssigaineBt,* the bond of May to-Patton. Ougilt-,not, tha-CdeedMiew-ever u n a v a i 1 i ng• fo r. o t h e r p u r p.o s e s o • b i n d- a t-1 e a s t that interest? The parties considered1 that . bond, -in-effect; as extinguished by the assignment-to Vawte-r, and his Saidideed.,„ It was nolfoi\any fraud, ,or by any collusion, that the bond was permitted to reiyiaki -in bis, hands, by Craigmed Thomas, after they had in-effect acquired a right to it by, said deed, which, although it cannot,.©'p-erate as a conveyance of the-Jegal titles may and ought; in equity, to be considered as binding and' transferring all the right which Yawter had or could dispose of. His subsequent assignment of that bond to Johnson,was,.fraudulent, and cannot affect the previous right of Craig, &c. Johnson’s subsequent recovery of,damages from May’s heirs, may he,-a hardship upon-thenn,Jfthéy were also to lose the-land; Yut that hardship.cannot-change the. equity of Craig,..&c. The argument -derived from this har-dsRip, is-completely obviated by (he offer made by the complainants in their' amended -bi-H,to repU}' to May’s heirs the sum awarded against them in favor of Johnson* if the court should think it equitable to impose such terms.
For the reasons, which have heen thus hastily and imperfectly suggested, andón account of the-difficulty, novelty arid hardship of the case, a mature re-examination ofitMs earnestly invited, anda re-hearing of the cause respectfully solicited.
CRITTENDEN AND HAGGIN.
A re-consideration was had, and on the 24th of April 1824, the petition was overruled, but the following opinion delivered:
On re-considering this cause, we discover no good ■ reasons for a change of the decree already rendered.
It is assumed, in the former opinion, that Mrs. Lewis, who held the estate in, trust, could not, while a 'feme (.overt, convey that estate- by -letter of attorney, and that she' riunst, convey ast a married woman. We deem it not necessary for-have-‘made that assumption; for the-oth;e&Be^$on§:.assi‘gnedyw©'eonceiyjey are -fully adequate-to-'pre-veB<t-s*tlae-i-'eontraiet' between Craig--and Yawter; *411 ____ ______ 'B&Hfe'ss Vawíe^r-Sle l,®r©.¥Ste,^(íi^fetiexé;cu1ret,ha't*,patór,'evfe:n'ifhe te@d-'4iS,s'^?|fj^iaibfvlftSm<th’is^;tf^g^g:t's'’; but he ÜljAeíd .tb^áí»ÍMRójÉ&«áÁ^ dh^PBS^áS Ebwis, only. k execuie thehtrust -.a'loñe,,pr ere). ridli rhw &^Bht, -1n;.w1xich character bye did n'dt'act. 'Así^t isthbf, fth® re-íbre^ nedessáTy'Mb'Me^i-d’e-in "this causee* whether* wsw^Ee^fej-vrfas'br was Rcft’s-ubjeet to - the disabilities of aWitedewómá'np'sé"as-tb‘disáWe- her from executing ifc®iyá<l;o':n'®^withó!vt'her'H'usbanfl,-or from c&’ing it bíybagéftit,’;we‘’withdraw the effect of tha-t assumption fiffeí&h^:í$frr4>er>'0pi'ffi‘on,-'as a preceden-fe;- and leave "the prejudiced, for'future consideration "and iii-iay whetu a* base- shall óccur’renderíng-its cañ-are»: necessary. - ' ’*
■ **'1tfetJsh,ai'l: ba*rely correct a mistake of facts, - as con- 1 fá'RMlimsthe ffeco rdpand'1as represented-ufthe petition; I't is'Stiidi that the record''contains the deeds of the‘other cbifrpiauáafrts, hesides'''Tfaomas and Craig.' Upon a stficijáíámina-tion it-will be seen that there is not one. d<e'edp’o¥- other writing, showing any title in the.'com-plaiha’nispeftcephTbomas and Craig, and that the deeds fried are deeds from Thomas and Craig'to otherpersons, tb-show-that-Thomas and Craig.acquiesced in and aqp knowled-ged the division lines of May’s heirs, as assign-. ed> them by the-commissioners. ' '
'*T-he petition Tora ra-hearing is overruled.