## Case No. 14,649a.

### UNITED STATES v. BRISTOW.

[See Case No. 3,393.]

---

## Case No. 14,650.

### UNITED STATES v. BRITTON.

[2 Mason, 464.] [1]

Circuit Court, D. Massachusetts. May Term, 1822.

FORGERY—DESTRUCTION BY DEFENDANT OF FORGED INSTRUMENT—INDICTMENT—PROOF OF—WHERE TRIED.

1. In an indictment for forgery, it is in general necessary to set forth the tenor of the instrument; and it must be proved as it is set forth.

2. It seems, that if the instrument be destroyed or suppressed by the prisoner, that fact being stated in the indictment will be a sufficient excuse for not setting forth the tenor.

[Cited in State v. Bryant, 17 N. H. 328; Moran v. Roberge, 84 Mich. 603, 48 N. W. 164.]

3. If the instrument is destroyed or suppressed by the prisoner, the tenor may be proved by parol evidence; the next best evidence is the rule; therefore if there be a copy which can be sworn to, that is the next best evidence.

[Cited in Com. v. Abbott, 130 Mass. 473; Nicholson v. Tarpey, 89 Cal. 622, 26 Pac. 1101. Cited in brief in Rhode v. McLean, 101 Ill. 469; Taylor v. McIrvin, 94 Ill. 490. Cited in note to Thompson v. Thompson, 9 Ind. 336.]

4. A check drawn in Philadelphia on Boston, in favor of the prisoner, who was then in Philadelphia, and who produces the check altered in Boston, if there be no evidence, that it was altered elsewhere, it is prima facie evidence, that it was altered in Massachusetts, that being the first state, where it is known to be altered.

[Cited in Com. v. Costley, 118 Mass. 26; State v. Yerger, 86 Mo. 39; Spencer v. Com., 2 Leigh, 757.]

5. Forgeries under the laws of the United States, must be tried in the district, where the crime is committed.

[6. Cited in State v. Houser, 26 Mo. 432, and Simmons v. State, 5 Ohio St. 352, to the point that there is no difference as to the rules of evidence between criminal and civil suits.]

Indictment for a forgery in altering a bank check. The indictment contains three counts. The substance of the first count was, that John Britton, the prisoner, having in his possession a certain order and check on the cashier of the office of discount and deposit of the Bank of the United States, at Boston, (setting forth in words and figures an order for $104, on the said cashier, signed by Thomas Wilson, the cashier of the parent bank at Philadelphia,) the said Britton, at said Boston, on the 31st of December, then last past, altered the said check, by obliterating and defacing the words, "one hundred and four," and writing the words, "nine hundred and ninety," with the intent to defraud the said bank, &c. The second count stated in substance, that the prisoner having in his possession, on the said 31st of December, a cer-

---

1 [Reported by William P. Mason, Esq.]

tain altered order and check, &c. (setting forth the same in words and figures,) did feloniously utter and publish the said order and check as true, he at the time of altering, &c. well knowing the same to be falsely altered, with intention to defraud the said bank, &c. The third count stated, in substance, that the prisoner feloniously altered and forged at said Boston, on the 31st of December, a certain order and check on the said bank, setting forth the same as before, in words and figures.

The material facts were, that the genuine check was drawn in Philadelphia, on the 26th of December, 1821, payable to the order of John Britton, the prisoner, for $104. The prisoner was at that time in Philadelphia, but the check was not procured by him personally, but through a broker of that city. On the 31st of December, 1821, the prisoner presented the check at the branch bank in Boston for payment, it being then altered to the sum of $9,090, and admitted his name to be John Britton, and that the bill was payable to him, and that the endorsement of his name on the back of it was his hand writing. The check was examined by the teller and cashier of the bank, and believed to be genuine; but the sum being large, and the appearance of the prisoner somewhat suspicious, payment of the check was ultimately refused, and the check at the prisoner's request was returned to him. The prisoner left the bank, but was watched, and his conduct appearing more suspicious, he was finally brought back to the bank, having been followed to Cambridge, and then the check was not to be found; but upon examination and search he declared it to be lost. The prisoner was ultimately committed to prison for trial. There was no proof in the case as to the time, manner, or circumstances, under which the prisoner became possessed of the check, nor when, nor by whom the alteration was made, nor when the prisoner left Philadelphia and arrived at Boston. But it was in evidence, that he might have arrived there in the stage within three days, and that if he left Philadelphia on the day the check was drawn, he could have arrived at Boston two days before the check was presented. The prisoner offered no explanation or evidence, to rebut any of the presumptions arising out of the facts against him. It appeared, that all the checks drawn upon the branches of the bank were of one uniform printed form and impression, in which blanks are left for the date, number, sum, person to whom payable, and the signature of the cashier, and the present check was drawn upon one of these printed forms. It also appeared in evidence, that the bank checks were bound up in a book, and when cut out, a memorandum was made in the margin of the book, of the number, date, sum, and person to whom made payable; and the book produced contained such a memorandum of the original check in this case. No copy of this check was taken and compared by any person with the original; but the cashier of

the branch at Boston, a few days after the transaction, made from recollection, what he now swore on the trial was an exact copy.

A. Dunlap and J. T. Austin, who were counsel for the prisoner, objected to the introduction of this testimony of the cashier to the tenor of the check, and contended, that in this case, where the check, supposed to be forged, was set out in the indictment in words and figures, no parol evidence of the tenor and contents of it was admissible. And that it was necessary, in order to support the indictment, that the attorney for the government should produce either the original check itself, or an examined copy of it, but this objection was overruled by the court. The counsel for the prisoner further contended in his defence, that no evidence was produced against the prisoner to show, that the crime, if committted by him at all, was committed within the district of Massachusetts. That the onus probandi, in this particular, clearly rested on the government, and that without such evidence the court had no jurisdiction of the offence.

STORY, Circuit Justice (charging jury). This is an indictment for the forgery of a check, drawn by the cashier of the Bank of the United States at Philadelphia upon the cashier of the branch at Boston. The forgery is alleged in the indictment to consist in the alteration of a genuine check, drawn for 104 dollars, to the sum of $9,090. The indictment sets forth the tenor of the original check, and the specific alterations made; and under these circumstances the government is undoubtedly held to strict proof of the instrument as set forth; and if there be any material variance or defect in the proof, the prisoner is entitled to a verdict. It is quite another question, whether, in cases where the instrument is in the prisoner's possession, or is destroyed, or lost by him, so that it is impossible to give an exact tenor of the instrument, it is necessary to set it forth in haec verba; or whether under such circumstances a general description of the instrument with apt averments, shewing it to be within the statute, and accounting for, and excusing the omission to set forth the tenor, would not have been sufficient to satisfy the nicest principles of law, applicable to this subject. See Com. v. Houghton, 8 Mass. 107. That question does not arise in this case, because the tenor is set forth, and the government has thus precluded itself from any right to insist on any proof, short of the exact description.

(After summing up the facts in the case, the judge went on to say): It is almost unnecessary to say, that if the parol evidence of witnesses be admissible to prove the tenor, the evidence in this case is as strong for this purpose, as it is possible to require. The memorandum in the check book, the testimony of the bank officers at Philadelphia, and the pointed declaration of the teller and cashier at Boston, who saw, and deliberately examined the check, when presented for payment, afford as conclusive evidence, as it seems possible to give of the exact contents of any written instrument. But the counsel for the prisoner, deny that any parol evidence can be given, in a case of this nature, of the contents of the check; and they assert, that in point of law nothing is admissible on an indictment framed like this, but the original instrument or an examined copy. And they rely on certain dicta in some authorities cited by them in proof of their doctrine. In my judgment the authorities cited by them establish no such position, as they contend for; and so far as they go, they seem to me, to lean altogether the other way. I take the rule to be universally true, and applicable as well to criminal as civil proceedings, that the best evidence the nature of the case admits of, and that is within the reach of the party, is always to be produced; for the law will never suffer secondary evidence to be admitted, when there is better behind and within the power of the party. If therefore, an instrument is to be proved, the original, if in the possession or control of the party, is to be produced; if the original be lost or destroyed, or in the possession of the opposite party, who refuses to produce it, an examined copy, if any such exists, and can be found, is the next best evidence, and must be produced. If no such copy exists, then the contents may be proved by parol evidence, by witnesses, who have seen and read it, and can speak pointedly and clearly to its tenor and contents. Rex v. Aickles, 1 Leach, 390; s. p. Id. note a; Com. v. Snell, 3 Mass. 82. It may be difficult in many cases to find such witnesses, and especially when the instrument is long and intricate; but if the facts are made out distinctly, and the jury believe the testimony, the law gives entire credence to such proof, and deems it sufficient to justify a verdict in a civil or criminal cause. I have no difficulty therefore, in declaring, that the testimony in this case is competent proof under the circumstances to establish the tenor of the check and alterations; and if the jury believe it, they are justified in finding these facts, as the indictment has charged them. This objection was indeed taken originally to the admissibility of the testimony, and was then overruled by the court upon the fullest deliberation; and I should not now dwell on it, if it had not been dwelt upon in another view, in the close of the argument.

The next point is, whether the prisoner was guilty of the offence, that is, of altering the check; for any material alteration of it is in point of law a forgery, and clearly within the purview of the statute. Bank Act April 10, 1816, c. 44, § 18 [3 Stat. 275]. Upon this I need not say more than that the check is drawn in the prisoner's favour, and he offers no explanation of its state,

when he received it, nor of the circumstances connected with it; and as it is a mere question of fact, the jury, I am sure, will draw the proper conclusion.

The next point of the defence is, that there is no proof, that the crime was committed within this district. If this be true, this court has no jurisdiction over the offence, for the jurisdiction is limited to crimes committed within this district, that is to say, within the state of Massachusetts. I agree also, that this is a fact to be established, at least by primâ facie or presumptive proof by the prosecutor, and that the onus probandi rests on the government. But it appears to me, that such primâ facie or presumptive proof is offered by the government in this case. The check was produced at Boston in an altered state; the prisoner offers no explanation of the time or place of the alteration. It is an act, which may have been done here, or at Philadelphia, or at any of the intermediate places; but the fact is peculiarly and exclusively within the cognizance of the prisoner. Acts of this sort are not usually done in the presence of witnesses; but in places of concealment, with a view to prevent detection; and it is rare, that the government can offer any evidence of the place of the forgery, except that which arises from the fact of the utterance of the forged instrument. And I take the rule of law to be, that the place, where an instrument is found or offered in a forged state, affords prima facie evidence, or a presumption, that the instrument was forged there, unless that presumption be repelled by some other fact in the case. All the cases cited at the bar establish this distinction. In all of them there were circumstances, which were thought to repel the general presumption. In none of them was it doubted, that in general the utterance of a forged instrument in a place was presumptive proof of a forgery there; and Mr. East, in his valuable treatise on the Crown Law (page 992), manifestly so explains the doctrine; for he speaks of the difficulty of establishing the fact of forgery within the county, "where the forger is not the utterer." In Parks & Brown's Case, 2 East, P. C. pp. 963, 992, c. 19, §§ 49, 61 (Id. 2 Leach, 775), the date of the instrument was in another county, than that where the prisoner was indicted, and there was no proof that he ever had it in his possession in the latter county. In Rex v. Crocker, 2 Bos. & P. 87, the forged bill was found upon the prisoner in Wiltshire, (where he was indicted) but it bore date about two years before, at a time when he was resident in another county, and where he resided for more than a year after the date; and a majority of the judges thought, that this circumstance repelled the presumption of a forgery in Wiltshire. Rex v. Thomas, 2 Leach, 877, turned upon the fact, that the jury found, that the forgery was not committed in the county, where the party was indicted. The rule, which I have

stated, is not merely correct in a legal sense, but is the dictate of common sense and reason. If a forged instrument is found or uttered in one place, and there is no evidence to show, that it was forged elsewhere, what ground is there to presume, that it was not forged, where it was found, or uttered? If its existence in a forged state is not proved in any other place, it must, from the necessity of the case, be presumed to have been forged, where its existence in such state is first made known. And there is no hardship in such a presumption, for the prisoner, if he thinks the fact in his favour, can shew, where it was forged, for he has cognizance of the time and place, or at least can shew, what was its state, when it first came into his possession. If the law were otherwise, it would be almost impossible to convict any person of a forgery, for such acts are done in retirement and concealment, far from the sight of all persons but confederates in guilt. In the present case it would be impossible to maintain an indictment in any other district, upon the evidence now before us, for the instrument was nowhere else seen in a forged and altered state. At Philadelphia it was in a genuine state, when last the witnesses saw it; and there is no evidence of any alteration in that state. The prisoner or his confederates with his consent, and in his presence, may have altered it in this district with as much ease and convenience as elsewhere, for no more time would be requisite, at least so far as we can judge from the evidence, to produce the effect here, (which seems to have been produced by some chemical process) than in any other place. The prisoner chooses to be silent as to the time of his arrival here, and as to the time and place, when and where he received the bill, and whether in an altered state or not. He therefore, leaves the natural presumption, whatever it is, in point of strength wholly unimpaired. If the real fact would help him, he has the means of giving us absolute certainty. The jury will therefore judge, whether his silence under these circumstances does not justify the conclusion, that the forgery was committed in this district.

Verdict, guilty, and prisoner sentenced accordingly.