JOHN L. MARINER, appellant, v. HIRAH SAUNDERS, appellee.

*Appeal from Fulton.*

As a general rule, when a paper from its ownership, nature and objects, has a particular place of deposit, or where, from the evidence it is shown to have been in a particular place or in particular hands, then that place must be searched by the witness proving the loss with the utmost good faith, and as thoroughly and vigilantly as if, were it not found, its benefit would be lost; or, in the other case, the person into whose hands the paper has been traced, must be produced. The evidence must satisfy the Court that the paper is destroyed, or cannot be found.

The highest and most satisfactory degree of secondary evidence is an office copy, or a certified copy of a deed from the recorder's office, and when such certified transcript of the record of a deed is offered, the statute dispenses with the strict proof of the loss of the original, which is required by the Common Law, and the party is only required to satisfy the Court that it is not in his power to produce it, as where it is shown to be in the possession of the opposite party, who, upon proper notice, refuses to produce it.

The certificate and acknowledgment of a deed from a *feme covert* to convey her own lands is as much an essential part of the execution of the deed as her seal and signature, and without it, the law presumes that it was obtained by fraud or coercion.

The execution of a lost deed must be quite as strictly proved as if the deed were produced in Court.

If a subscribing witness to a deed reside out of the jurisdiction of the Court, he need not be produced.

The best accessible evidence must be produced, whether it be of a primary, or of a secondary character.

EJECTMENT, in the Fulton Circuit Court, brought by the appellee against the appellant, and heard at the March term, 1848, before the Hon. Norman H. Purple and a jury, when a verdict and judgment were rendered for the plaintiff below.

So much of the evidence in the case as was material to the determination of the questions of law raised by counsel, will be found in the Opinion of the Court.

*R. S. Blackwell*, and *C. B. Lawrence*, for the appellant.

1. Where a party brings ejectment for land, averring that he is "seized in his own demesne as of fee," he makes an affirmative allegation which he must prove upon the trial by the highest and best evidence in his possession or power. 2 Greenl. Ev. 251, § 303.

It is an established rule of the Common Law, that no estate of.freehold can pass but by *deed.* *Jackson* v. *Wood*, 12 Johns. 73; Rev. Stat. 102, § 1.

Therefore the best evidence in support of his allegation of *seizin in fee*, is deeds and other documentary evidence of title. These are always presumed to be in his possession or power, and can be easily produced. *Moson* v. *Park*, 3 Scam. 533, 4; *Jackson* v. *Todd*, 3 Johns. 303.

If he withholds the better evidence, the law presumes that if produced, it would make against the plaintiff. 1 Greenl. Ev. 97, § 82; *Tayloe* v. *Riggs*, 1 Peters, 595.

But where such evidence is shown to be unattainable, the presumption of fraud ceases, and secondary evidence is admitted of necessity. *U. S.* v. *Doebler*, 1 Baldwin, 521.

Proof of the existence or due execution, and *loss* of title papers, is sufficient to lay the foundation for the introduction of secondary evidence. 1 Greenl. Ev. 623, § 558.

This evidence is addressed to the Court, who are to determine as to its sufficiency. *Jackson* v. *Frier*, 16 Johns. 193.

The loss of the instrument is usually proved by circumstantial evidence, direct evidence being but seldom attainable. *Taunton Bank* v. *Richardson*, 5 Pick. 442.

The circumstances usually relied upon to establish the loss of the instrument, is *diligent search* in those places where it would most likely be found, and such is the character of the evidence introduced and relied upon in the trial of the case at bar. *Palmer* v. *Logan*, 3 Scam. 56; *Rogers* v *Miller*, 4 do. 334.

Is the evidence offered in this case sufficient to establish the *loss* of the deeds? Unless it is, the Court below erred in permitting evidence of their execution and contents to go to the jury. *Rees* v. *Lawless*, 4 Littell, 219; *Jackson* v. *Frier*, 16 Johns. 193.

Where there are suspicious circumstances, the Courts are more strict in requiring proof of loss. *Renner* v. *Bank of Columbia*, 5 Peters Cond. R. 700; *Minor* v. *Tillotson*, 7 Peters, 99; 5 Eng. Com. Law R. 291.

All places where the supposed deed would most probably

be found must be thoroughly searched. *Jackson* v. *Hasbrouck*, 12 Johns. 192; *Dan* v. *Brown*, 4 Cowen, 483.

And all persons who would probably know anything about the lost instrument must be inquired of. *Jackson* v. *Hasbrouck*, 12 Johns. 192; 2 Eng. Com. Law R. 328.

Presumption that deed is in hands of Walters' executor or the guardian of Ruth Walters, because legally entitled to it. *Kent* v. *Weld*, 2 Fairf. 461.

Hearsay evidence of loss is inadmissible. *The King* v. *Inhabitants of Denio*, 14 Eng. Com. Law R. 102; *Chapin* v. *Taft*, 18 Pick. 379; *Dan* v. *Brown*, 4 Cowen, 483; *Angell* v. *Felton*, 8 Johns. 149.

The persons who made the search must be called. *Taunton Bank* v. *Richardson*, 5 Pick. 436; *Jackson* v. *Cris*, 11 Johns. 437.

Where the instrument is traced to the hands of a particular person, he must be called and sworn to give an account of it. *The King* v. *The Inhabitants of Castleton*, 6 T. R. 236; 3 Johns. 300; *Parkins* v. *Cobbett*, 11 Eng. Com. Law R. 394; *The King* v. *The Inhabitants of Denio*, 14 do. 102; *Jackson* v. *Hasbrouck*, 12 Johns. 192; *Woods* v. *Garrett*, 11 New Hamp. 442; *Poignaud* v. *Smith*, 8 Pick. 278; *The Governor* v. *Barkley*, 4 Hawks, 20, cited in 2 U. S. Dig. 265, § 1410.

2. The execution of the originals ought to have been proved, before evidence of their contents was admissible. *Elmendorf* v. *Carmichael*, 3 Littell, 479; *Jackson* v. *Frier*, 16 Johns. 196; 3 do. 300.

The subscribing witnesses should have been produced to prove the execution of the lost deed. 1 Greenl. Ev. 636, § 569; ib. 643, § 576; *Gillespie* v. *Osburn*, 3 A. K. Marsh. 80; *Whittemore* v. *Brooks*, 1 Greenl. 57; *Morgan* v. *Marshall*, 7 J. J. Marsh. 317; *Griffith* v. *Husten*, 7 do. 387; *Kelsey* v. *Hammer*, 18 Conn. 317, 318; *Gillis* v. *Smither*, 3 Eng. Com. Law R. 460; *Kimball* v. *Morrill*, 4 Greenl. 370; 4 Cowen, 489.

3. The next best evidence was a copy from the record, and should have been produced; the parol evidence was there-

fore inadmissible. *Brewster* v. *Countryman*, 12 Wend. 446; 2 Peters' Dig. 222, § 767; ib. 233, § 772; *Cowan* v. *The State*, 4 Blackf. 241; *Rhind* v. *Wilkinson*, 2 Taunt. 237; *Hilts* v. *Colvin*, 14 Johns. 182; 1 Greenl. Ev. § 84, *note;* *Dunlap* v. *Berry*, 4 Scam. 330; *Renner* v. *Bank of Columbia*, 5 Peters' Cond. R. 700; *United States* v. *Britton*, 2 Mason, 464, cited in 5 Peters' Cond. R. 261, *note; Riggs* v. *Tayloe*, 9 Wheat. 483; 5 Peters' Cond. R. 647.

4. The evidence of the contents of the lost deed was too vague and uncertain to warrant the jury in rendering a verdict for the appellee. *United States* v. *Britton*, 2 Mason, 464; 5 Peters' Cond. R. 261; *Tayloe* v. *Riggs*, 1 Peters, 600.

5. The declaration avers, and the verdict finds that appellee was seized in fee. The evidence does not disclose what interest he had in the premises, and the verdict is therefore clearly not warranted by the testimony.

6. The plaintiff claims, and the verdict finds for him title to the whole tract of land. The evidence only shows his title to an undivided moiety.

The patentee conveyed to Mooney and wife. The law is well settled that a conveyance to husband and wife does not constitute them joint tenants or tenants in common; they constituting but one person in law, they cannot take by moieties, but both are seized of the entirety, the consequence of which is, that neither can alien without the consent of the other, and on the death of one, the estate survives to the other. 2 Black. Com. 182; Coke's Litt. 187; *Doe,* ex dem. *Freestone* v. *Parrott*, 5 T. R. 652; *Shaw* v. *Hersey*, 5 Mass. 521; *Fox* v. *Fletcher*, 8 Mass. 274; *Jackson* v: *Stevens*, 16 Johns. 115; *Sergeant* v. *Steinberger*, 1-4 Ohio Cond. R. 372; *Ross* v. *Garrison*, 1 Dana, 35; *Motley* v: *Whittemore*, 2 Dev. & Bat. 537; *Doe* v: *Howland*, 8 Cowen, 277; *Den* v: *Hardenburg*, 5 Halst. 42.

It nowhere appears in evidence that Mooney and wife executed and acknowledged the deed to Walters in due form of law, and that she was of age at the time the deed was executed. This must appear or her interest does not pass. Territorial Laws, 1807, p. 97–8; *Elliott* v. *Piersoll*, 1 Peters,

328; *Hepburn* v. *Dubois*, 12 Peters, 345; *Lewis* v: *Waters*, 3 Har. & McHen. 430 ; *Payne* v. *Parker*, 1 Fairf. 178 ; *Rhea* v. *Rhenner*, 1 Peters, 109.

*O. H. Browning & N. Bushnell*, for the appellee.

The Opinion of the Court was delivered by

CATON, J.   We are first to inquire whether the proof of the loss of the two deeds,.from McCoy to Mooney and wife, and from them to Walters, was sufficient to admit secondary evidence of their contents.   The plaintiff swore that the deeds were never in his possession, although he had been in pursuit of them for four years; that he had searched in the Recorder's office, where he was informed that one Gerald might have had them; on applying to Gerald he was informed that the deeds had been taken from the Recorder's office by the agent of Walters, to take them to him in New York, and that the agent had died in Indiana on his way thither; that he had sent an agent to New York to obtain proof on another branch of the case, and to inquire of the guardian of Ruth Walters for these deeds, who was unable to find them.   He then employed an agent in New York who wrote him that he had made a thorough search for the deeds, but without success.   He made no personal examination except at the Recorder's office.   Bryant, the agent, swore that he went to New York and inquired of the guardian of Ruth for the deeds, who stated that he could not find them after diligent search.   Upon this the Court admitted secondary evidence of their contents.

From the nature of the subject there is some difficulty in laying down a general rule, defining the extent and vigilance of the search which a party must make, before the Court may conclude that the paper is destroyed or lost, so as to admit secondary evidence of its contents.   As a general rule, however, we may say, that when from the ownership, nature or objects of a paper, it has properly a particular place of deposit, or where from the evidence it is shown to have been in a particular place or in particular hands, then

that place must be searched by the witness, proving the loss, or the person produced into whose hands it has been tracep.    The extent of the search to be made in such place or by such person, must depend in a great degree upon circumstances.    Ordinarily, it is not sufficient that the paper is not found in its usual place of deposit, but all the papers in the office or place should be examined.    But this need not always be done, when from the extent of thé archives or office, it would be impracticable, and the order in which it is kept a more limited examination is equally satisfactory. In all cases the search must be made with the utmost good faith, and should be as thorough and vigilant, as, if the paper were not found, its benefit would be lost.    On the whole, the Court must be satisfied that the paper is destroyed, or cannot be found.    It is true, the party need not search every possible place where it might be, for then the search might be interminable; but he must search every place where there is a reasonable probability that it may be found.    Nor must he produce every man upon the stand, into whose hands rumor alone may have traced it, for if the inquiry is only suggested by hearsay, it may be answered by hearsay. If, on the other hand, legal testimony shows it to have been in a particular place, or if the natural and legitimate presumption is that it is in certain hands, then it must be proved by legal evidence that it is not there.

We are aware that some cases may be found which seem to tolerate looser practice; but so far from establishing a general rule, they serve to admonish us of the danger of departing from well established legal rules, with the hope of meeting justice in a particular case.

In the case of *Minor* v. *Tillotson*, 7 Peters, 99, the party having first proved that the original grant was once in the possession of Gen. Wade Hampton, showed that his attorney had applied to him for it, who gave him a bundle of papers stating that they were all the titles of his ( Hanna's ) lands in his possession; but the lost paper was not among them.    The Court say: "The examination was made by the witness under all the advantages and prospects of finding the

deed, that could have been afforded to Hampton himself. He was for this purpose in possession of all his papers, and not finding it, the inference was very strong that it was lost.

In determinining this, as any other question, the Court must act upon facts established by legal proof. How was it in this case? The paper had been in Gen. Hampton's possession, when last heard of. He handed a bundle of papers to the plaintiff's attorney, stating that they were all the title papers which he had relating to the property in question, among which the missing paper was not found. It would be difficult to assign any legal reason why Gen. Hampton's bare word should be taken to establish a fact in a Court of Justice, when every other fact must be sworn to by a competent witness. With the same propriety might it have been shown that the lost paper was not in that bundle, by proving that the plaintiff's attorney had said so. The fact admitted upon the hearsay of Hampton was as material as that established by the testimony of the attorney; and if one might be admitted upon hearsay, so might the other. And with the same propriety might all other facts have been proved in the same way. Had Hampton been in Court, his bare word would hardly have been taken. Nor, had the statement been sworn to, would it have been deemed sufficient without ascertaining that he had examined his other papers with particular reference to the one lost. It seems to us that the case shows a departure from the well established rules of evidence.

A reference to a few of the many cases, holding the law as we understand it on this subject, will be sufficient. In *Parkins* v. *Cobbett*, 11 Eng. Com. Law R. 394, the Court said: "You must, in all cases, give the best evidence of the loss of the original writing that the case admits." Again: "But here it is traced to the defendant's daughter, and therefore she must be called; and if she is not, secondary evidence cannot be given of the contents." In *Chapin* v. *Taft*, 18 Pick. 379, the plaintiff swore that another who had had the letter told him it was lost, was held insufficient. The case of *Woods* v. *Gassett*, 11 New Hamp. 242, is equally in point,

and then the Court quote with approbation what is said in 1 Phil. Ev. 456, where the rule is stated without qualification. And in *Taunton Bank* v. *Richardson*, 5 Pick. 436, the Court refused to admit secondary evidence of the contents of a letter, where the cashier who was sworn, could not say positively whether it was directed to him or one of the directors, who had said he had searched for it in vain. The witness suggested that it was probably destroyed by a fire. The Court said, as it might have been directed to the other, he should have been called.

Indeed, the general rule is too well settled to admit of discussion, although, after all, the Court must be vested with a certain discretion, depending upon the peculiar circumstances of each particular case. If there is the least suspicion of fraud or design to be gathered from any part of the testimony, the Court cannot be too strict in the testimony required, especially as the party himself is a competent witness to prove the loss of the paper; and even where the utmost good faith is manifested, the search should be vigilant and thorough.

Testing this case by the law, as understood by us, we are satisfied that no sufficient foundation was laid to admit secondary evidence of the contents of these deeds, and especially of that from Mooney to Walters. Without saying whether the statement of the plaintiff that he had searched the Recorder's office was sufficient to dispense with calling the Recorder, there can be no doubt that the executor, or other person having the custody of Walters' papers since his death, should have been examined. This was not done. All we know is, that the guardian of Ruth Walters, who was the heir of the grantee, told Bryant that he could not find them after diligent search, and the hearsay of Madison that he had made extensive and unavailing inquiries. This is nothing but hearsay, and hence inadmissible to prove the loss of the deed to Walters. The same may be said of the deed from McCoy to Mooney, although as to that deed, the objection was obviated by the testimony of Mooney, when he was sworn in chief.

We will next inquire whether the execution of these deeds was sufficiently proved, for the execution of a lost deed must be quite as strictly proved as if the deed were produced in Court. It appears from the plaintiff's testimony, that each of these deeds was attested by two subscribing witnesses, all of whom resided in New York. This was sufficient to dispense with the production of the subscribing witnesses. But afterwards, when Mooney came to testify, while he corroborated the statement of the plaintiff as to the number and names of the subscribing witnesses, he shows that one of the witnesses to the deed from McCoy to himself and wife, resided in Quincy, which was within the jurisdiction of the Court. This destroyed the foundation upon which the Court had properly admitted the secondary evidence of the execution of that deed, which should then have been withdrawn from the jury, and the production of the witness required. 3 Littell, 479.

It is unnecessary to say whether Mooney was a competent witness to prove the execution of the deed by himself to Walters, without accounting for the absence of the subscribing witnesses, for both were proved to have been without the jurisdiction of the Court. But we have no doubt that under no circumstances was it competent for him to prove the execution of the deed by his wife. As well might a justice of the peace, or other officer, take the acknowledgment of his own wife to the execution of a deed where it has to be taken in the absence of the husband.

Nor do we think the contents of these deeds properly proved, admitting their loss and execution to have been established. The position assumed by the counsel for the appellee, that there are no grades or degrees in secondary evidence, cannot be sustained upon principle or by authority; although Park, J. in *Brown* v. *Woodman*, 25 Eng. Com. Law R., 358, is reported to have said, on a trial at *Nisi Prius:* " There are no degrees in secondary evidence. If there had been a duplicate original, it might have been different." There are other cases from which we might infer that this rule was understood to prevail, but this is the

only case which we have met with where it appears to have been expressly decided. The books, however, abound with decisions, expressly holding that the best accessible evidence must be produced, whether it be of a primary or of a secondary character.

In *Riggs* v. *Tayloe*, 5 Peters' Cond. R., 646, the Court said that the party, after showing the loss of the original, " may read a counterpart, or if there is no counterpart, an examined copy, or if there should not be an examined copy, he may give parol evidence of the contents. " And in the same book, (p. 691) the Court said : "Proof of the contents of a lost paper ought to be the best the party has in his power to procure, and, at all events, such as to leave no reasonable doubt as to the substantial parts of the paper. " The same rule as in the two preceding cases is held in 2 Mason, 464, and the Court said, that " when the proof is made out by parol, the witness should have seen and read the paper, and be able to speak pointedly and clearly as to its tenor and contents. " Nor is it necessary, in all cases, that the proof should show affirmatively that there is such counterpart or copy, in order to exclude the parol proof; but the Court will often presume, from the nature and character of the paper, that one exists; as in the case of *Rhind* v. *Wilkinson*, 2 Taunton, 237, speaking of the proof of the contents of a lost licence, the Court said : " If the licence were under the sign manual, there was doubtless some register of it somewhere preserved; it was highly probable that Price had a copy, and, therefore, the Court could not say that the parol evidence was the best evidence that could be obtained, and the rule for a nonsuit must consequently be made. " *Hilts* v. *Colvin*, 14 Johns. 182, affords another example where a similar presumption prevailed.

There is no case where the reason of the rule, that the best attainable evidence should be produced, applies with more force than in the proof of the contents of lost papers, nor is there any case where parol proof is more unsatisfactory or more likely to do injustice. Rarely, if ever, can a witness recollect the precise terms of a paper, or give more

than his general impression of the substance from the perusal, when many important particulars may not have attracted his attention, and must, almost necessarily, have escaped his recollection. The highest and most satisfactory degree of secondary evidence is an office copy, as a certified copy of a deed from the Recorder's office,—unless an exemplification of the record of a judgment, a Patent or a grant, which may be used, although the original be in Court, be considered secondary evidence—and when such certified transcript of the record of a deed is offered, our statute has dispensed with the strict proof of the loss of the original, which is required by the Common Law, and the party is only required to satisfy the Court that it is not in his power to produce it. It may be remarked, however, that this strictness of the proof of the contents of a paper is not required, where the original is shown to be in possession of the opposite party, who, upon proper notice, refuses to produce it; for then every intendment, and indulgence must be taken against him who, by the production of the original, could remove all doubt.

In this case it did appear pretty satisfactorily, that better evidence could have been produced of the contents of these 'deeds, than the recollection of Mooney. Before this class of secondary evidence was resorted to, the plaintiff offered a certified transcript of the record of these deeds from the Recorder's office, for the purpose of proving not only the contents but the execution of the originals, which were ruled out, because the record did not show that they were properly acknowledged or proved. While these were not proper evidence for the jury, they still served to inform the Court that it was probably within the power of the party to have procured sworn copies of the deeds, after having proved their execution in some legal way. The danger of this parol evidence is illustrated in this very case, for the plaintiff swore that he claimed under deeds of which these papers were copies, and Mooney's recollection makes both deeds good and operative, while the copy of one shows, at least without some more explanation than we have, that it

was void for uncertainty. We are of opinion, that the plaintiff ought to have been required to produce sworn copies or show that the person who copied them into the Recorder's books was dead or could not be produced, before allowing Mooney to speak of their contents.

But admitting everything proved that was insisted upon, still the deed from Mooney and wife to Walters conveyed no sort of interest whatever to the grantee. The evidence showed that the deed from McCoy was to Mooney and wife, who thereby became neither joint tenants, nor tenants in common, but tenants of the entirety. In 2 Black. Com. 182, it is said : "If an estate in fee be given to a man and his wife, they are neither properly joint tenants nor tenants in common; for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety *per tout et non per my*, the consequence of which is, that neither husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor." The same rule is laid down in Coke's Lit. 187 ; Tho's Coke, 575. Where an estate was conveyed to husband and wife and daughter, it was held that the parents took one moiety as tenants of the entirety of the undivided moiety and the daughter the other. *Bock* v. *Andrews*, 2 Vern. 120 ; See also, 5 T. R. 652. In *Ross* v. *Garrison*, 1 Dana, 35, the rule was held as stated in Blackstone, and it was also held that the statute *jus accrescendi* did not apply, but the survivor took the whole estate. The case of *Jackson* v. *Stevens*, 16 Johns. 115, is precisely like the foregoing in every particular. In that case the Court say : "The statutory provision that no estate in lands shall be held or claimed under any grant, devise or conveyance unless the premises therein mentioned shall expressly be declared to pass, not in tenancy in common but in joint tenancy, does not extend to this case, for the estate of the husband and wife is not a joint tenancy. More references would be unnecessary. It is apparent, then, that as Mooney and wife were tenants of the entirety, Mooney alone could convey no interest whatever in the estate to Walters, the

ancestor of the plaintiff's grantor. This brings us to the inquiry, whether the case shows that Mooney's wife was a party to that deed, or in other words, whether as to her it ever took effect, for if it did not as to her, it could not as to her husband.

By the eleventh section of an Act of the Territorial Legislature, passed Sept. 17th, 1807, and by an amendment thereto, passed in 1813, the manner and before whom, a deed purporting to convey the estate of the wife shall be acknowledged by her is prescribed, and deeds thus acknowledged and certified are declared to be good and effectual as if the wife were sole. These statutes were in force at the time this deed purports to have been executed, and there is no pretence that there was any such certificate of acknowledgment as the law required. Without such acknowledgment the deed was absolutely void, and had no more vitality than a piece and of blank paper. Only by virtue of such acknowledgment certificate could the deed become operative. Its execution could be proved in no other possible way, and in no other way could she convey. The certificate of acknowledgment of a deed from a *feme covert* to convey her own lands is as much an essential part of the *execution* of the deed, as her seal or signature, and without it the law presumes that it was obtained by fraud or coercion. This deed then being void as to the wife could convey no part of, or interest in the estate, she being entitled to the whole estate as survivor on the death of her husband. Whether this deed was so well executed by the husband, as to take effect and relate back to the time of its execution, in case he survives his wife, we will not now undertake to say.

There are some other questions of minor importance presented by this record which we deem it unnecessary to notice. The questions, however, which we have examined, being important, and new in this Court, and directly presented by the record, we have felt it our duty to settle them now.

The judgment of the Circuit Court is reversed and the cause remanded for another trial.

*Judgment reversed.*