By the Court. Slosson, J.
The action is brought to recover a balance of account alleged to be due from the defendant, to the late firm of N. Gilman & Son, which was dissolved by the death of N. Gilman, Jr., to whose executors, the present plaintiffs, the claim was assigned by the surviving partner of the house.
The referee to whom the case was referred, has reported a balance, including interest to the date of his report, of $23,792 21.
The transactions between the parties extend over a period, from December, 1846, to February, 1853, at which time N. Gilman, Jr., died. These consisted of loans made by the firm to the defendant, of sales of leather consigned by him to them, and of the discount, by the firm, of notes held by him. Such discounts appear to have been made by checks. No loans appear to have been made by the defendant to the firm.
*240 Soon after the dissolution of the firm, an account was rendered, by the surviving partner to the defendant, setting out the entire transactions between the parties, from December, 1846, to February, 1853, and it was claimed, at the trial, that this account had been acquiesced in, and that it had the effect of an account stated.
The plaintiffs do not seem to have relied upon this as wholly sufficient to establish the case, for, in addition to the evidence of the rendering of the account, they attempted to establish a great portion of the debit items of it, by independent proof.
The witness, to prove these items, was a Mr. M'Clellan, who had been a book-keeper in the firm up to 1850, and then, after an absence of nearly three years, returned to its employ, where he continued to the period of its dissolution.
To a large number of the items proved by him, no objection is made, but in respect to others the evidence is objected to, as incompetent or insufficient. The evidence in respect to these latter items consists, first, of the checks of the firm to the order of, and endorsed by the defendant, covering nearly $9,000, in amount, and extending over a period, from December 20, 1850, to September 27, 1851; second, two drafts drawn by the defendant on the firm, amounting together, to $1,000; and third, two checks of the defendant, amounting together, to $2,320. There is then a series of charges, of over $2,000 in amount, of which the only, or principal evidence, is the account rendered.
In respect to the checks of the firm, it is objected that they are, in themselves, no evidence of money loaned, but only of money paid, and that the presumption is, that they were paid in discharge of a debt. A check is certainly not evidence in itself of a loan, but under certain circumstances it may be good evidence for that purpose, and we should be disposed to think, were there no other question in the case, that the referee, under the evidence, was justified in considering them proof to this point.
In respect to the second objection, that of the admissibility of the defendant’s drafts on the firm, as evidence of a debt on his part, we are clear, that it is well taken. Apart from the account rendered, these drafts furnish no evidence of an indebtedness.
The presumption is, that they were drawn on funds, in the hands of the firm, belonging to the defendant.
*241 It would appear from the account, that the firm had received leather for sale, from the defendant, at different times, as there are credits on account of such sales. In the account, if properly made up, these drafts would be proper debits; but standing by themselves, they furnish no evidence of debt against the defendant.
In respect to the two checks drawn by the defendant, it is objected, that there is no proof that they had been presented for payment and that payment was refused. We think it a sufficient answer to this, that the defendant kept no bank account at the period when these checks were drawn.
The principal piece of evidence on the part of the plaintiffs, however, and on which they chiefly rely to sustain their case, is the fact, that an account was rendered to the defendant in the spring of 1853, immediately after the dissolution of the firm, by the death of N. Gilman, Jr., in which, as is claimed, the defendant acquiesced.
It appears that the firm had been in the habit of rendering yearly accounts to their customers, and as I should infer from the evidence, to the defendant, in which interest was included.
At the period referred to, a statement of the entire account was transcribed from the ledger, covering the whole period of the parties’ transactions with each other, and rendered to the defendant.
Three questions are raised in respect to this account. First, as to the proof of the account itself; second, as to the defendant’s acquiescence in it; and third, as to the liability of the defendant for interest, charged in it.
The first is the material question, in the view we take of the case.
The defendant being called upon, on the trial, to produce the original account rendered, declined to do so, and the clerk who made out the original account from the ledger, of which it was a mere transcript, then produced another transcript from the ledger, of the same account, which he appears to have drawn off for the purposes of the trial; and the same was offered as evidence of the contents of the account which had been rendered. The witness swore it was a true copy from the books, and he had not a doubt that it was a correct copy of the one rendered, with *242 the exception of one item of credit, which did not appear in the account rendered; because the item had not been then posted in the ledger. The ledger was not in court, nor was any offer made to produce it in lieu of the copy, nor was the copy read, on the ground of convenience, with an offer to produce the book for the purpose of comparison, or as a substitute for the copy, with an offer to produce that, if required. But the new transcript was offered as, in itself, competent evidence of the contents of the original account, after the refusal of the defendant to produce the latter.
It was objected to, on the ground, that it was not the best secondary evidence which it was in the party’s power to produce ; but it was admitted under an exception to the ruling.
I do not mean to contend that' there are any arbitrary or inflexible degrees of secondary evidence, rendering it necessary for a party, who is driven to that description of proof, to show affirmatively, in every instance, that there is no higher degree within his power, than the one he offers; but I think it may be safely said, that where it appears in the very offer, or from the nature of the case itself,,or from the circumstances attending the offer, that the party has better and more reliable evidence at hand, and equally within his power, he shall not be permitted to resort to the inferior degree first. As a general principle, the law requires the best evidence within the party’s power to produce; and I see no reason why this rule should not equally apply to secondary as to primary proof. There is this difference, it is true, between the two classes of proof: primary proof is necessarily single in its character, while all below it, admits of a wider range, and the fact may be established by a variety of evidence, as, for example, the contents of a lost paper may be established by a sworn copy made at the time, or by a rough draft, or by mere recollection; but it does not follow that all distinction between these kinds of proof is to be disregarded, and that they are all on a level, and it will hardly be contended, I think, that a witness would be allowed to prove the contents of a lost paper by recollection, when he had in his pocket a sworn, or even an unsworn copy made by him at the time the paper in question was written. In the U. S. v. Britton (2 Mason, 464), where the contents of a bank check—for the alter *243 ation of which the defendant had been indicted for forgery—was proved. by the recollection of a witness, the original check having been destroyed by the defendant, Judge Story held, that the rule was universal, both in criminal and civil proceedings, that the best evidence was to be produced which the nature of the case admitted of, and that if an original instrument was lost, or in the possession of the adverse party, and he refused to produce it, an examined copy, if such existed and could be found, was the next best evidence, and must be produced; but if no such copy existed, then the contents of the paper might be proved by witnesses who had seen and read it, and could speak pointedly and clearly to its tenor and contents.
In Hilts v. Colvin (14 J. R. 182) a witness for the plaintiff was objected to as incompetent, on the ground that he had been convicted of a felony, and the proof of the conviction was by the parol testimony of a witness, after it had been shown that the office of the clerk, in which the record of conviction would have been found on file, had been burned down and its contents destroyed. It was objected to the admission of the proof, that by statute, the District-Attorney was required to certify a transcript of every conviction to the Court of Exchequer at the next term, there to remain on record, and that this transcript should be produced, as better evidence than the mere parol testimony of the witness. The Judge admitted the evidence and excluded the plaintiff’s witness, in consequence of which he was non-suited. The Court above reversed the judgment, on the ground that the transcript, which must be intended to be remaining in the Court of Exchequer, was “ higher proof, in the power of the party, than that given in the Court below.”
In a note to § 84 of 1 Grreenleaf on Ev., the author says, that the result of the American cases seems to establish the rule to be, that “ if, from the nature of the case itself, it is manifest that a more satisfactory kind of secondary evidence exists, the party will be required to produce it; but where the nature of the case does not, of itself, disclose the existence of such better evidence, the objector must not only prove its existence, but must also prove that it was known to the other party, in season to have been produced at the trial.”
There are several admitted grades of proof in respect to the *244 contents of a lost'deed, as first, a counterpart, if there be one; if no counterpart, then a compared copy.;' and if no copy, then ah abstract or parole evidence; and it seems that evidence of a mere copy:would not be admitted, until it had been shown that the counterpart could not be produced,: . (Starkie Ev., Part 2, 354-5; 2 Atk. 71.).
Where the proof offered is of the same grade, the distinction of degrees ceases, as where the contents of a lost letter, of which no copy exists, is to be. proved by the mere recollection of witnesses, the testimony of one who had read and remembered the contents, is as good as that of one who wrote the letter. (Ditto, ditto, 357.)
In England, the rule as to. secondary proof, seems. of late years to have been much relaxed. .In Brown v. Woodman, 6 C. & P. 206, it was ruled at Nisi Prius, by Parke, Justice, that there were no degrees of secondary evidence, and he allowed the contents of a letter, which the defendant had written to the plaintiff, .and which the plaintiff declined to produce under a notice, to be proved by the oral testimony of a witness, though the defendant had kept a copy of the letter-; but, he said, if there had been a duplicate original, it might have been different.
■ ■ In the case at bar, the evidence offered, is not a compared copy of the account rendered, or a duplicate of that account (in either of which respects, the book from .which it was taken may well be regarded, and which would be the" next best evidence to the original itself); but it is a copy of such copy. In swearing to such last transcript,, therefore, as a correct copy of the account rendered, the witness is, in reality, swearing only to the . accuracy of it, as a transcript from the book, or, argumentatively, as a copy of the account rendered, because the latter was also taken from the book. ' . ■
We think it would be dangerous to hold such evidence admissible. If in the case, of a lost deed the party should attempt to prove its contents by producing a copy of a counterpart, or of an examined copy of the deed," and'which copy so offered he had made for the purposes of the trial, while the examined copy, or counterpart itself was admitted to be in his possession, and could be produced, would he be allowed to do it? Clearly not. Is there any difference in principle in the case of a party refusing to *245 produce, on notice, an original paper, of less solemnity than a deed ? Does such refusal justify a looser land of secondary evidence, on the part of the party calling for its production, than in the case of a lost instrument ? Is it difficult to perceive why. It is said the party who refuses to produce the original, cannot complain that the other resorts to evidence of an inferior nature to that which he has it in his power to produce, because, having the original in his possession, he has the means of correcting any defect in the proof—but this will not always hold good; for it often happens that the original is not produced, because the party called on to produce it, may not have the actual possession or control of it at the time, or may have good and proper reasons for not producing it. The law can look only to the end to be attained, and that is, the truth, by the best and most reliable testimony.
However satisfactory the evidence may have been to the referee, we think in face of the admitted fact that better evidence was present, and might have been resorted to, the transcript from, the ledger, should not have been admitted as evidence of the contents of the account rendered.
This will render a new trial necessary.
It is unnecessary to express any opinion upon the question; how far the evidence sustains the finding of the referee, that the defendant acquiesced in the account as rendered—but it may be proper to say, on the question of interest, that it appearing to have been the practice of the firm to make up annual accounts, charging interest, and this custom known to the defendant during his dealings with them, and it farther appearing, though not, I admit, very clearly, that annual accounts, made up in this manner, were rendered to the defendant, and there being no evidence of his ever having objected to the charge of interest, it is a reasonable presumption that he dealt with the firm, on the understanding that he was to pay interest, and assented to it. (Esterly v. Cole, 3 Com. 502.)
There should be a new trial, costs to abide event.