JAMES E. CROSS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1901.*

1. CRIMINAL LAW—*People are not required to make profert of forged instrument.* The People are not required to make profert, in an indictment, of a forged instrument; nor is profert made by setting out the forged instrument in the indictment *in hæc verba.*

2. SAME—*copy of note is admissible in trial for forgery.* Under an indictment for forgery, which sets out the forged note *in hæc verba,* a copy of the note is admissible as secondary evidence if a proper foundation has been laid.

3. SAME—*what prima facie sufficient evidence that copy of forged note is a true one.* Evidence of a stenographer that she made a type-written copy of the forged note from the original, that she compared it with the State's Attorney by first reading the original while he held the copy and then reading the copy while he held the original, and that the copy was true and correct, is *prima facie* sufficient proof that the copy was correct.

4. SAME—*right of People to call a grand jury witness whose name is not on the indictment.* It is not error to permit a witness to testify in a criminal case whose name is not on the indictment, although he testified before the grand jury, where notice that he would be called was given to the accused before trial, and it does not appear that he was taken by surprise or prejudiced by the omission of the name from the indictment.

WRIT OF ERROR to the Circuit Court of DuPage county; the Hon. CHARLES A. BISHOP, Judge, presiding.

Plaintiff in error was indicted and convicted of the crime of forgery at the October term, 1900, of the circuit court of DuPage county.   The evidence was sufficient to establish these facts: That Cross, the plaintiff in error, was in December, 1899, in the employ of a medical concern located in Chicago, called the "Dr. Green Medical Dispensary," of which O. H. Marquardt was secretary and treasurer; that during that month he called on one L. E. Ketchum, a farmer, at his home in DuPage county, to solicit him to become a patient of said dispensary and

to be treated for and cured of hernia by skilled practitioners in medicine and surgery to be furnished by said concern; that he and Ketchum soon afterward met at a hotel in Naperville, in said county, and, coming to an agreement, Ketchum executed and delivered to Cross his promissory note, as follows:

"$60.00.                    NAPERVILLE, ILL., *Dec. 23, 1899.*

"For value received, six months after date I promise to pay to the order of O. H. Marquardt, secretary and treasurer of the Dr. Green Medical Dispensary, the sum of sixty dollars, with legal interest. And to secure the payment of said amount I hereby authorize, irrevocably, any attorney in any court of record to appear for me in such court, in term time or vacation, at any time hereafter, and confess judgment, without process, in favor of the holder of this note for such amount as may appear to be unpaid thereon, together with costs and fifteen dollars attorney's fees, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgment, hereby ratifying and confirming all that my said attorney may do by virtue thereof.
No. 14774.                    L. E. KETCHUM."

At the same time Cross executed and delivered the following guaranty to Ketchum:

"NAPERVILLE, ILL., *Dec. 23, 1899.*

"Received of L. E. Ketchum a promise to pay $60, for which we guarantee to treat L. E. Ketchum for three months, or until completely cured.

"It is hereby agreed if a complete cure is not effected at the end of three months, the treatment is to be continued so long thereafter as may be necessary to effect a permanent cure, failing in which, we hereby agree to release L. E. Ketchum from any subsequent obligation whatsoever. It is furthermore agreed that our treatment and advice shall be followed continuously during the period of this contract; that we be notified when more medicine is needed, in order to supply it, and informed promptly of any change of symptoms or effects produced thereby. The treatment to be through correspondence. Medicine prescribed by Dr. Ranager and sent by express, patient to pay express charges.

DR. GREEN MEDICAL DISPENSARY,

No. 1175.                    By J. E. CROSS, *Especial Ex.*"

Afterward, and without the knowledge or consent of Ketchum, Cross, as it was charged, inserted the figure "3" before the figures "60" at the head of the note, and the written words "three hundred" before the words "sixty dollars" in the body of the note, making the note one for $360 instead of one for $60. Cross sent the note as it then read, for $360, to Marquardt, in Chicago, and shortly after, in January following, went to Chicago, and Marquardt endorsed it without recourse and delivered it to Cross to be sold and negotiated. On January 3, 1901, Cross mailed the note to Frank S. Lindley, at Danville, in a letter offering him the note for $300, and requesting him to investigate and to send him draft if he wanted the note. Lindley sent the note to a bank in Naperville, and the bank, after delivering it to the State's attorney of DuPage county to be copied by him, returned it to Lindley. Ketchum repudiated the note as being a forgery,—that is, all of it in excess of $60,—but did not deny the genuineness of his signature. Lindley was a witness before the grand jury and on the trial. He testified that he had delivered the note to C. W. Cross, the father of the defendant, and that the defendant told him that his father had delivered it to him, the defendant, to settle the matter with Ketchum if he could. C. W. Cross did not appear as a witness, but the defendant, testifying in his own behalf, denied that he had received or seen the note after he mailed it to Lindley, or that he had told Lindley that he had. It was proved that before he mailed the note to Lindley he had tried to sell it at Wheaton for $300. The note was not produced on the trial or accounted for, except as above stated. The defendant below testified that the understanding arrived at with Ketchum was, in the first place, to treat him for catarrh for the consideration of $60, and that the note and guaranty given were for that amount, but that Ketchum then informed him that he had a rupture, and that they then made an agreement that he should be treated and cured

of both ailments for $360, and that he then tore up the
$60 note and threw the pieces into the slop-jar in his
room in the hotel in the presence of Ketchum, and that
Ketchum executed and gave him the $360 note to pay for
treating him for both catarrh and hernia, and that he
gave Ketchum another guaranty to cover the treatment
for both ailments, but forgot to take up the first guar-
anty for treatment for catarrh only. This instrument of
guaranty, which was given in evidence, does not state
what the disease was, and Ketchum in his testimony de-
nied that any such second note or guaranty was given,
or that he had contracted for or requested any treatment
for catarrh.

BOTSFORD, WAYNE & BOTSFORD, for plaintiff in error:

Where, in an indictment for forgery, a copy is set out
under an averment "in the words and figures following,"
the note so forged must be proven exactly as laid. *Lang-
don* v. *People,* 100 Ill. 267; Wharton on Crim. Evidence,
(9th ed.) secs. 114, 115-118.

The allegation in the indictment under an averment
of "in the words and figures following," where the indict-
ment contains no hint of a lost note, is as strong as pro-
fert of a deed in a declaration. When such profert is
made, secondary evidence cannot be received. *Dugger* v.
*Oglesby,* 99 Ill. 412.

Secondary evidence is not admissible unless the in-
dictment shows the note is lost or it is beyond the power
of the People to produce the same. Wharton on Crim.
Evidence, (9th ed.) sec. 118.

The foreman of the grand jury must endorse on the
back of the indictment the names of all witnesses sworn
on the case. Starr & Cur. Stat. par. 17, p. 2396.

This is mandatory on the foreman, and a disregard of
the requirement would no doubt be sufficient ground to
authorize the court, upon proper motion, to quash the in-
dictment. *Andrews* v. *People,* 117 Ill. 199.

There is no requirement of the law of the State that the names of witnesses shall appear upon the back of the indictment, except those who testify before the grand jury.  *Kota* v. *People*, 136 Ill. 658.

According to the English practice, an examined copy, to be admissible in evidence, must be verified by a witness who will swear that he has compared the copy tendered, with the original, either directly or through one employed to read the original.  Wharton on Crim. Evidence, (9th ed.) sec. 179.

EDWARD C. AKIN, Attorney General, and M. SLUSSER, State's Attorney, for the People:

In an indictment for forgery, where the alleged forged instrument is set out by its tenor, no allegation that the instrument is lost or destroyed is necessary to entitle the prosecution to introduce secondary evidence of the contents of the forged instrument, where proper ground has been laid for the introduction of secondary evidence. *State* v. *Potts*, 9 N. J. L. 26; *Mead* v. *State*, 53 id. 601; *United States* v. *Britton*, 2 Mason, 464; *Duffin* v. *People*, 107 Ill. 113; *Commonwealth* v. *Snell*, 3 Mass. 81.

Witnesses whose names are not endorsed on the indictment may be permitted to testify, and such action of the court cannot be assigned for error.  *Yates* v. *People*, 14 Ill. 435; *Perteet* v. *People*, 70 id. 171; *Kirkham* v. *People*, 170 id. 13; *Smith* v. *People*, 74 id. 144; *Logg* v. *People*, 92 id. 598; *Gore* v. *People*, 162 id. 265; *Bolen* v. *People*, 184 id. 338.

In the absence of any contrary showing it will be presumed that the names of witnesses endorsed upon the back of an indictment were the witnesses, and only witnesses, upon whose evidence the indictment was found. *Andrews* v. *People*, 117 Ill. 195.

In a case where secondary evidence of the contents of a written instrument is admissible it is sufficient to admit a copy in evidence, if the witness testifies that it is a copy.  *Lombard* v. *Johnson*, 76 Ill. 599.

Mr. JUSTICE CARTER delivered the opinion of the court:

The note for the forgery of which (by altering it from one for $60 to one for $360) the defendant below was indicted was not produced on the trial, but a copy was admitted in evidence over the objection of the defendant, and this decision of the court is the principal error assigned and relied on to reverse the judgment. The chief objection was and is, that the indictment did not count on the forgery of a lost instrument, or on one in the hands of the defendant, or out of the power of the People to produce, but that it counted on the forgery of an instrument, using the language of the indictment, "in the words and figures following, to-wit:" (setting out the note *in hæc verba,*) and the contention of counsel for plaintiff in error is, that under such a pleading nothing but the note itself is admissible; that such an allegation is equivalent to a profert of the note and requires the production of it, and cannot be supported by a copy; that the evidence showed that if the note was lost or was in the hands of the defendant or out of the power of the People to produce, that fact existed when the indictment was found, and that without an allegation of such fact in the indictment it could not be proved so as to lay the foundation for the introduction of a copy or proof of contents, and *Dugger* v. *Oglesby,* 99 Ill. 405, is cited to support counsel's contention.

At common law, in civil suits on deeds or sealed instruments where profert was required, it was necessary to produce the instrument itself, and a copy would not suffice. But there is no rule of law or practice in criminal cases requiring the government to make profert of instruments of writing in the indictment, and we find nothing in this indictment which can be construed as making profert of the note alleged to have been forged. The indictment is framed in accordance with correct rules of pleading in criminal cases, which at common law, in cases charging forgery, require that the forged instru-

ment shall be described with particularity. This was done in this case by setting it out *in hœc verba*. By so setting it out, profert of the note was not made or attempted to be made. Of course, only the note described and as set out could be proved under the issue, but no particular *kind* of evidence was called for by the indictment to prove it. Inasmuch as the tenor of the note was set out it was not necessary to allege any excuse for not setting it out or for not describing it with sufficient certainty, as, that it was lost, or destroyed, or in the hands of the accused. (9 Ency. of Pl. & Pr. 578.) It remained for the People to prove the charge as particularly as it was alleged, and that could be done by any competent evidence. Secondary evidence (in this case the copy of the note) became competent when the proper foundation was laid. The same rules of evidence were applicable to prove the issue as in other cases.

This precise question was decided by the Supreme Court of New Jersey in *State* v. *Potts*, 4 Halst. 26, (17 Am. Dec. 449,) where it was among other things said: "In the first place, a profert in an indictment is never made. It charges that the defendant uttered the note, and states it with due particularity. A declaration alleges that the defendant made the deed, 'which the plaintiff brings here into court,' and which, as is familiarly known, the plaintiff did, especially in the time of the year books and of *ore tenus* pleadings, actually produce in court before the judges, where it remained during the term and was then taken by the plaintiff unless denied by the plea, when it remained in the hands of the *custos brevium* until the trial of the cause. * * * The making of a profert in a declaration in a civil action regulates the kind of evidence to be produced on the trial; but as a profert in criminal cases does not exist, either in principle or in practice, the manner in which the charge is set forth in the indictment does not govern the kind, although it may affect the degree or quantity, of evidence requisite

to sustain it. Thus, if an indictment charges that the defendant uttered a forged instrument 'of the tenor following' or 'in the words following,' the contents of the instrument as laid must be strictly and literally proved. * * * But this mode of expression does in nowise govern the kind of evidence whereby such proof is to be made, nor require that it be made by written evidence, when, if some other mode of expression had been adopted, a different or inferior species of evidence would have sufficed. The indictment sets forth the facts necessary to constitute the crime of forgery or publication of forgery. How these facts are to be proved depends on the general rules of evidence, and these are the same in both civil and criminal cases. The best practicable is to be produced,—the writing, if in existence and in the power of the State; if lost, destroyed or in the possession of the defendant, a copy or parol evidence of its contents. It is true that in certain cases the indictment must contain an averment of the loss or destruction of the instrument, or some other proper cause for the omission of a full description, as where, after the forgery or publication of the instrument, it has been lost, destroyed or passed into the hands of the defendant, and yet sufficient of its contents can be proved to show it to be an instrument of which a forgery may be perpetrated, the want of a more full description must be excused by proper averments. But this is a rule of pleading—not of evidence—to prevent an exception to the indictment,—not to legitimate secondary or inferior evidence." See, also, *Mead* v. *State*, 53 N. J. L. 601; *United States* v. *Britton*, 2 Mason, 464; *Commonwealth* v. *Snell*, 3 Mass. 81; *Duffin* v. *People*, 107 Ill. 113.

But counsel say that if the law had been as stated it has been changed in this State by section 9 of article 2 of the constitution of 1870, which provides that "in all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation and to have a copy thereof," and that, in effect, the

accused was denied this right in this case. We are unable to see that his rights under the constitution were in anywise abridged. He was furnished with a copy of the indictment and a list of the witnesses. The nature and cause of the accusation were fully set forth in the copy of the indictment furnished to him. The passing of the forged instrument into his own hands or into the hands of others beyond the reach of officers of the law, or its loss or destruction, was no part of the accusation against him nor of its nature or cause.

It is also said that the defendant had expert witnesses present at the trial to examine the note and to testify respecting the alleged alteration of it, and that by the admission of the copy in evidence he was denied the benefit of such testimony. But it is sufficient to say that such a thing might happen in any case where an important instrument of evidence is lost or cannot be produced. Had counsel desired to have the note examined by experts, he could have ascertained, in advance of the trial, that the State was unable to produce it, and could have been as well prepared to meet the case of the People as fully as if the loss had been alleged in the indictment. The defendant was charged with the knowledge of the law that after laying the proper foundation for secondary evidence it would become the duty of the court to admit such evidence on any question before the jury. It may be that in some cases it might be more difficult to establish the forgery of an instrument which has been lost or destroyed and in others more difficult to defend against the charge; but such a situation of parties usually has its compensating advantages, which counsel are not likely to allow to pass unnoticed.

The next point made is, that the evidence was not sufficient to establish the fact that the copy admitted in evidence was a true copy of the alleged forged note. The only point made is, that the stenographer who copied it testified that after she made the copy on the typewriter

from the original handed to her for that purpose, she compared it with the State's attorney by first reading the original to him while he held the copy, and then by reading the copy to him while he held the original, and that the copy was true and correct; and it is argued that only the State's attorney could know from such a comparison whether or not the copy was correct, inasmuch as only he examined each paper while the other was being read. Such a comparison may be defective in the respect mentioned, but the stenographer testified that she made the copy from the original before her and read over both the original and the copy, and knew that the latter was a true copy of the original. It is not disputed that the note from which she made the copy was the alleged forged note, and we think the evidence was sufficient to establish *prima facie* that the copy offered was a true copy of the note alleged to have been forged.

Contention is also made that it was error to permit the witness Lindley to testify because his name had not been endorsed on the indictment and it appeared by his testimony that he had testified before the grand jury. Section 17 of chapter 78 of the statute concerning jurors provides that the foreman of the grand jury shall "in each case in which a true bill shall be returned into court as aforesaid, note thereon the name or names of the witness or witnesses upon whose evidence the same shall have been found." We have uniformly held that the People are not confined to the witnesses whose names have been noted on the indictment by the foreman, but, in the discretion of the court, may call other witnesses. (*Bolen v. People*, 184 Ill. 338, and cases there cited.) But counsel make the point that in former cases decided by this court it did not appear that the witnesses whose names were not noted on the indictment, and who were permitted to testify, were witnesses upon whose evidence the indictment was found by the grand jury, and therefore that such cases are not decisive of the case at bar. As has

been said in several cases, the statute does not require the names of all witnesses who may be called to testify against the accused on the trial shall be noted on the indictment, but only those upon whose evidence the indictment shall have been found. (*Andrews* v. *People*, 117 Ill. 195; *Kota* v. *People*, 136 id. 655.) True, by other provisions of the statute the accused is entitled to the names of the witnesses who are to be called against him, and notice was given to him in this case, before the trial, that Lindley would be called to testify for the People. It does not appear that the defendant was taken by surprise or was in any way prejudiced by the omission of the foreman of the grand jury to note the name of this witness on the indictment, and we cannot believe it was the intention of the legislature to provide that no witness who shall have testified before the grand jury on the finding of the indictment shall be permitted to testify on the trial unless the foreman of the grand jury shall have endorsed his name on the indictment. The object of the statute is to give notice, (*Scott* v. *People*, 63 Ill. 508,) to enable the accused to prepare to meet the charge and to prevent surprise. When the same notice is otherwise furnished to the accused in apt time, on behalf of the People, that a witness whose name is not on the indictment will be called, the purpose of the statute is accomplished. It is not meant to be said that an indictment without the name of any witness endorsed on it would be good, (*Andrews* v. *People*, 117 Ill. 195,) but only that it is not error to allow, after proper notice, a witness whose name is not noted on the indictment but who testified before the grand jury, to testify on the trial against the accused.

No complaint is made respecting the instructions, but it is contended that the court should have granted a new trial on the evidence. We are satisfied that the offense charged was sufficiently proved by the evidence and that no error was committed in this regard.

The judgment must be affirmed.

*Judgment affirmed.*